**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| SHIRLEY A. HILSTER and<br>CHARLES W. HILSTER, JR., | CIVIL DIVISION – ASBESTOS |
| | G.D. NO. 20-_____ |
| Plaintiffs, | |
| | Issue No. |
| vs. | |
| | **COMPLAINT IN CIVIL ACTION** |
| AIR & LIQUID SYSTEMS CORPORATION,<br>individually and as successor-in-interest to<br>Buffalo Pumps, Inc.; | Code:        012 – Asbestos |
| A. O. SMITH CORPORATION;<br>ARMSTRONG INTERNATIONAL, INC.;<br>AURORA PUMP COMPANY;<br>BECHTEL CORPORATION; | Filed on Behalf of Plaintiff |
| BW/IP INC., and its wholly-owned<br>subsidiaries; | Counsel of Record for this Party: |
| CARBOLINE COMPANY;<br>CENTRAL HUDSON GAS & ELECTRIC<br>CORPORATION; | Craig E. Coleman, Esq.<br>PA. I.D. # 39391 |
| COPES-VULCAN, INC.;<br>CRANE CO.; | **CAROSELLI, BEACHLER & COLEMAN** |
| CRANE INSTRUMENTATION &<br>SAMPLING, INC. f/k/a Circor<br>Instrumentation Technologies, Inc. f/k/a<br>Hoke Inc.; | Firm No. 589<br>20 Stanwix Street, Suite 700<br>Pittsburgh, PA  15222<br>(412) 391-9860<br>(412) 391-7453 (fax)<br>Email: ccoleman@cbmclaw.com |
| CROSBY VALVE, LLC;<br>DANA COMPANIES LLC, successor-by-<br>merger to Dana Corporation; | and |
| DEZURIK, INC.;<br>DUQUESNE LIGHT COMPANY; | **DEAN OMAR BRANHAM SHIRLEY, LLP** |
| EATON HYDRAULICS LLC, as successor-<br>by-merger to Eaton Hydraulics, Inc. as<br>successor-in-interest to Vickers Inc. | 302 N. Market Street, Suite 300<br>Dallas, Texas 75202<br>(214) 722-5990<br>(214) 722-5991 (fax) |
| ECKEL INDUSTRIES, INC.;<br>ELECTRIC BOAT CORPORATION, a<br>subsidiary of General Dynamics<br>Corporation; | Benjamin D. Braly, Esq.<br>TX State Bar No. 24047574<br>(To Be Admitted *Pro Hac Vice*)<br>Email: bbralyl@dobslegal.com |
| ELECTROLUX HOME PRODUCTS, INC.;<br>EMERSON ELECTRIC CO., individually and<br>as successor-in-interest to Copeland<br>Corporation; | Jessica M. Dean, Esquire<br>TX State Bar No. 24040777<br>(To Be Admitted *Pro Hac Vice*)<br>Email: jdean@dobslegal.com |
| | **JURY TRIAL DEMANDED** |

ENTERGY CORPORATION, individually,
    and as successor-in-interest to Entergy
    Nuclear Vermont Yankee, LLC;
EXELON CORPORATION;
EXELON GENERATION COMPANY, LLC,
    a subsidiary of Exelon Corporation;
FIRSTENERGY CORP.;
FLOWSERVE CORPORATION f/k/a The
    Duriron Company Inc.;
FMC CORPORATION;
FOSTER WHEELER ENERGY
    CORPORATION;
GENERAL DYNAMICS CORPORATION;
GENERAL ELECTRIC COMPANY;
GOULDS PUMPS LLC;
GRINNELL LLC d/b/a Grinnell Corporation;
IMO INDUSTRIES, INC.;
ITT, LLC, f/k/a ITT Corporation, ITT
    Industries Inc., ITT Fluid Products Corp.,
    Hoffman Specialty Mfg. Corp., Bell and
    Gossett Company, and ITT Marlow;
IU NORTH AMERICA, INC. as successor-by-
    merger to The Garp Company f/k/a The
    Gage Company f/k/a Pittsburgh Gage And
    Supply Company;
METROPOLITAN LIFE INSURANCE
    COMPANY, a wholly-owned subsidiary of
    MetLife, Inc.;
MIDAMERICAN ENERGY COMPANY;
NIANTIC SEAL INC.;
NIANTIC SEAL RIP, INC. f/k/a Niantic Seal
    Inc. f/k/a Niantic Rubber Company;
PENNSYLVANIA ELECTRIC COMPANY, a
    wholly-owned subsidiary of FirstEnergy
    Corp.;
PSEG NUCLEAR LLC, a subsidiary of Public
    Service Enterprise Group Incorporated;
PSEG POWER LLC, a subsidiary of Public
    Service Enterprise Group Incorporated;
PUBLIC SERVICE ENTERPRISE GROUP
    INCORPORATED;
SCHNEIDER ELECTRIC SYSTEMS USA,
    INC. f/k/a Invensys Systems, Inc.;
SEMINOLE ELECTRIC COOPERATIVE,
    INC.;

SEQUOIA VENTURES, INC. f/k/a Bechtel
   Corporation;
SPENCE ENGINEERING COMPANY, INC.;
THE GOODYEAR TIRE & RUBBER
   COMPANY;
THE WILLIAM POWELL COMPANY;
TRI-STATE GENERATION AND
   TRANSMISSION ASSOCIATION, INC.;
VERMONT YANKEE NUCLEAR POWER
   CORPORATION;
VIACOMCBS INC. f/k/a CBS Corporation, a
   Delaware corporation f/k/a Viacom, Inc.,
   successor by merger to CBS Corporation, a
   Pennsylvania corporation f/k/a
   Westinghouse Electric Corporation, and
   also as successor-in-interest to BF
   Sturtevant;
VIKING PUMP, INC.;
VISTRA CORP. f/k/a Vistra Energy Corp. as
   successor-in-interest to Dynegy Inc.;
WARREN PUMPS LLC;
WEIR VALVES & CONTROLS USA INC.,
   individually and as successor-in-interest to
   Atwood & Morrill Co., Inc.;
YUBA HEAT TRANSFER LLC;

        Defendants.

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| SHIRLEY A. HILSTER and<br>CHARLES W. HILSTER, JR. | CIVIL DIVISION – ASBESTOS |
| Plaintiffs, | G.D. NO. 20-_____ |
| vs. | |
| AIR & LIQUID SYSTEMS CORPORATION,<br>et. al., | |
| Defendants. | |

### NOTICE

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any claim or relief requested by the Plaintiffs. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

**Lawyer Referral Service**

Allegheny County Bar Association

400 Koppers Building - 436 Seventh Avenue

Pittsburgh, PA 15219

(412) 261-5555

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| SHIRLEY A. HILSTER and<br>CHARLES W. HILSTER, JR., | CIVIL DIVISION – ASBESTOS |
| Plaintiffs, | G.D. NO. 20-_____ |
| vs. | |
| AIR & LIQUID SYSTEMS CORPORATION,<br>et. al., | |
| Defendants. | |

**COMPLAINT IN CIVIL ACTION**

**AND NOW,** come the Plaintiffs above-named, by their attorneys, Caroselli Beachler & Coleman and Dean Omar Branham Shirley, LLP and files the following Complaint in Civil Action whereof the following is a statement:

1.      The Plaintiffs, Shirley A. Hilster and Charles W. Hilster, Jr., are adult individuals who reside at 10321 Big Horn Trail, Frisco, Texas 75035.

2.      The Defendant, Air & Liquid Systems Corporation, individually and as successor-in-interest to Buffalo Pumps, Inc., is a corporation organized under the laws of the Commonwealth of Pennsylvania, having its principal place of business in the Commonwealth of Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

3.      The Defendant, A. O. Smith Corporation, is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Wisconsin, and is qualified to do business in the Commonwealth of Pennsylvania.

4.      The Defendant, Armstrong International, Inc., is a corporation organized under the laws of the State of Michigan, having its principal place of business in the State of Michigan, and is qualified to do business in the Commonwealth of Pennsylvania.

1

5.      The Defendant, Aurora Pump Company, is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Illinois, and is qualified to do business in the Commonwealth of Pennsylvania.

6.      The Defendant, Bechtel Corporation, is a corporation organized under the laws of the State of Nevada, having its principal place of business in the State of Virginia, and is qualified to do business in the Commonwealth of Pennsylvania.

7.      The Defendant, BW/IP Inc., and its wholly-owned subsidiaries, is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Texas, and is qualified to do business in the Commonwealth of Pennsylvania.

8.      The Defendant, Carboline Company, is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Missouri, and is qualified to do business in the Commonwealth of Pennsylvania.

9.      The Defendant, Central Hudson Gas & Electric Corporation, is a corporation organized under the laws of the State of New York, having its principal place of business in the State of New York, and is qualified to do business in the Commonwealth of Pennsylvania.

10.      The Defendant, Copes-Vulcan, Inc., is a corporation organized under the laws of the State of Delaware, having its principal place of business in the Commonwealth of Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

11.      The Defendant, Crane Co., is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Connecticut, and is qualified to do business in the Commonwealth of Pennsylvania.

12.      The Defendant, Crane Instrumentation & Sampling, Inc. f/k/a Circor Instrumentation Technologies, Inc. f/k/a Hoke Inc., is a corporation organized under the laws of

the State of New York, having its principal place of business in the State of South Carolina, and is qualified to do business in the Commonwealth of Pennsylvania.

13.     The Defendant, Crosby Valve, LLC, is a corporation organized under the laws of the State of Nevada, having its principal place of business in the State of Missouri, and is qualified to do business in the Commonwealth of Pennsylvania.

14.     The Defendant, Dana Companies LLC, as successor-by-merger to Dana Corporation, is a corporation organized under the laws of the State of Virginia, having its principal place of business in the State of Ohio, and is qualified to do business in the Commonwealth of Pennsylvania.

15.     The Defendant, DeZurik, Inc., is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Minnesota, and is qualified to do business in the Commonwealth of Pennsylvania.

16.     The Defendant, Duquesne Light Company, is a corporation organized under the laws of the Commonwealth of Pennsylvania, having its principal place of business in the Commonwealth of Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

17.     The Defendant, Eaton Hydraulics LLC, individually and as successor-by-merger to Eaton Hydraulics, Inc. as successor-in-interest to Vickers Inc., is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Ohio, and is qualified to do business in the Commonwealth of Pennsylvania.

18.     The Defendant, Eckel Industries, Inc., is a corporation organized under the laws of the State of Massachusetts, having its principal place of business in the State of Massachusetts, and is qualified to do business in the Commonwealth of Pennsylvania.

3

19.     The Defendant, Electric Boat Corporation, a subsidiary of General Dynamics Corporation, is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Connecticut, and is qualified to do business in the Commonwealth of Pennsylvania.

20.     The Defendant, Electrolux Home Products, Inc., is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of North Carolina, and is qualified to do business in the Commonwealth of Pennsylvania.

21.     The Defendant, Emerson Electric Co., individually and as successor-in-interest to Copeland Corporation, is a corporation organized under the laws of the State of Missouri, having its principal place of business in the State of Missouri, and is qualified to do business in the Commonwealth of Pennsylvania.

22.     The Defendant, Entergy Corporation, individually and as successor-in-interest to Entergy Nuclear Vermont Yankee, LLC, is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Louisiana, and is qualified to do business in the Commonwealth of Pennsylvania.

23.     The Defendant, Exelon Corporation, is a corporation organized under the laws of the Commonwealth of Pennsylvania, having its principal place of business in the State of Illinois, and is qualified to do business in the Commonwealth of Pennsylvania.

24.     The Defendant, Exelon Generation Company, LLC, a subsidiary of Exelon Corporation, is a corporation organized under the laws of the Commonwealth of Pennsylvania, having its principal place of business in the Commonwealth of Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

25.    The Defendant, FirstEnergy Corp., is a corporation organized under the laws of the State of Ohio, with its principal place of business in the State of Ohio, and is qualified to do business in the Commonwealth of Pennsylvania.

26.    The Defendant, Flowserve Corporation f/k/a The Duriron Company, Inc., is a corporation organized under the laws of the State of New York, having its principal place of business in the State of Texas, and is qualified to do business in the Commonwealth of Pennsylvania.

27.    The Defendant, FMC Corporation, is a corporation organized under the laws of the State of Delaware, having its principal place of business in the Commonwealth of Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

28.    The Defendant, Foster Wheeler Energy Corporation, is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of New Jersey, and is qualified to do business in the Commonwealth of Pennsylvania.

29.    The Defendant, General Dynamics Corporation, is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Virginia, and is qualified to do business in the Commonwealth of Pennsylvania.

30.    Defendant, General Electric Company, is a corporation organized under the laws of the State of New York, having its principal place of business in the State of Massachusetts, and is qualified to do business in the Commonwealth of Pennsylvania.

31.    The Defendant, Goulds Pumps LLC, is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of New York, and is qualified to do business in the Commonwealth of Pennsylvania.

32.     The Defendant, Grinnell LLC d/b/a Grinnell Corporation, is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Florida, and is qualified to do business in the Commonwealth of Pennsylvania.

33.     The Defendant, IMO Industries, Inc., is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of New Jersey, and is qualified to do business in the Commonwealth of Pennsylvania.

34.     The Defendant, ITT, LLC f/k/a ITT Corporation, ITT Industries Inc., ITT Fluid Products Corp., Hoffman Specialty Mfg. Corp., Bell and Gossett Company, and ITT Marlow, is a corporation organized under the laws of the State of Indiana, with a principal place of business in the State of New York, and is qualified to do business in the Commonwealth of Pennsylvania.

35.     The Defendant, IU North America, Inc. as successor-by-merger to The Garp Company f/k/a The Gage Company f/k/a Pittsburgh Gage And Supply Company, is a corporation organized under the laws of the State of Delaware, with a principal place of business in the Commonwealth of Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

36.     The Defendant Metropolitan Life Insurance Company a wholly-owned subsidiary of MetLife Inc., is a corporation organized under the laws of the State of New York, having its principal place of business in the State of New York, and is qualified to do business in the Commonwealth of Pennsylvania.

37.     The Defendant MidAmerican Energy Company, is a corporation organized under the laws of the State of Iowa, having its principal place of business in the State of Iowa, and is qualified to do business in the Commonwealth of Pennsylvania.

38.     The Defendant Niantic Seal Inc., is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Rhode Island, and is qualified to do business in the Commonwealth of Pennsylvania.

39.     The Defendant Niantic Seal RIP, Inc. f/k/a Niantic Seal Inc. f/k/a Niantic Rubber Company, is a corporation organized under the laws of the State of Rhode Island, having its principal place of business in the State of Rhode Island, and is qualified to do business in the Commonwealth of Pennsylvania.

40.     The Defendant, Pennsylvania Electric Company, a wholly-owned subsidiary of FirstEnergy Corp., is a corporation organized under the laws of the Commonwealth of Pennsylvania, having its principal place of business in the State of Ohio, and is qualified to do business in the Commonwealth of Pennsylvania.

41.     The Defendant, PSEG Nuclear LLC, a subsidiary of Public Service Enterprise Group Incorporated, is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of New Jersey, and is qualified to do business in the Commonwealth of Pennsylvania.

42.     The Defendant, PSEG Power LLC, a subsidiary of Public Service Enterprise Group Incorporated, is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of New Jersey, and is qualified to do business in the Commonwealth of Pennsylvania.

43.     The Defendant, Public Service Enterprise Group Incorporated, is a corporation organized under the laws of the State of New Jersey, having its principal place of business in the State of New Jersey, and is qualified to do business in the Commonwealth of Pennsylvania.

44.     The Defendant, Schneider Electric Systems USA, Inc. f/k/a Invensys Systems, Inc., is a corporation organized under the laws of the State of Massachusetts, with its principal place of business in the State of Massachusetts, and is qualified to do business in the Commonwealth of Pennsylvania.

45.     The Defendant, Seminole Electric Cooperative, Inc., is a corporation organized under the laws of the State of Florida, having its principal place of business in the State of Florida, and qualified to do business in the Commonwealth of Pennsylvania.

46.     The Defendant, Sequoia Ventures, Inc. f/k/a Bechtel Corporation., is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Virginia, and qualified to do business in the Commonwealth of Pennsylvania.

47.     The Defendant, Spence Engineering Company, Inc., is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of New York, and is qualified to do business in the Commonwealth of Pennsylvania.

48.     The Defendant, The Goodyear Tire & Rubber Company, is a corporation organized under the laws of the State of Ohio, having its principal place of business in the State of Ohio, and is qualified to do business in the Commonwealth of Pennsylvania.

49.     The Defendant, The William Powell Company, is a corporation organized under the laws of the State of Ohio, with its principal place of business in the State of Ohio, and is qualified to do business in the Commonwealth of Pennsylvania.

50.     The Defendant, Tri-State Generation And Transmission Association, Inc., is a corporation organized under the laws of the State of Colorado, having its principal place of business in the State of Colorado, and is qualified to do business in the Commonwealth of Pennsylvania.

51.    The Defendant, Vermont Yankee Nuclear Power Corporation, is a corporation organized under the laws of the State of Vermont, having its principal place of business in the State of Vermont, and is qualified to do business in the Commonwealth of Pennsylvania.

52.    The Defendant, ViacomCBS Inc. f/k/a CBS Corporation, a Delaware corporation f/k/a Viacom, Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation and also as successor-in-interest to BF Sturtevant, is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of New York, and is qualified to do business in the Commonwealth of Pennsylvania.

53.    The Defendant, Viking Pump Inc., is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Iowa, and is qualified to do business in the Commonwealth of Pennsylvania.

54.    The Defendant, Vistra Corp. f/k/a Vistra Energy Corp. as successor-in-interest to Dynegy, Inc., is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of Texas, and is qualified to do business in the Commonwealth of Pennsylvania.

55.    The Defendant, Warren Pumps LLC, is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Massachusetts, and is qualified to do business in the Commonwealth of Pennsylvania.

56.    The Defendant, Weir Valves & Controls USA Inc., individually and as successor-in-interest to Atwood & Morrill Co., Inc., is a corporation organized under the laws of the State of Massachusetts, having its principal place of business in the State of Texas, and is qualified to do business in the Commonwealth of Pennsylvania.

9

57.    The Defendant, Yuba Heat Transfer LLC, is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Oklahoma, and is qualified to do business in the Commonwealth of Pennsylvania.

58.    At all times pertinent hereto, the Defendant corporations acted through their duly authorized agents, servants and employees, who were then in the course and scope of their employment and furtherance of the business of said corporation.

59.    The Defendant, Air & Liquid Systems Corporation, individually and as successor-in-interest to Buffalo Pumps, Inc., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

60.    The Defendant, A. O. Smith Corporation, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

61.    The Defendant, Armstrong International, Inc., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

62.    The Defendant, Aurora Pump Company, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

63.    The Defendant, Bechtel Corporation, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer, contractor and/or premises where Plaintiff, Charles W. Hilster, Jr., performed work.

64.    The Defendant, BW/IP Inc., and its wholly-owned subsidiaries, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

65.    The Defendant, Carboline Company, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

66.     The Defendant, Central Hudson Gas & Electric Corporation, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer and/or premises where Plaintiff, Charles W. Hilster, Jr.,  performed work.

67.     The Defendant, Copes-Vulcan, Inc., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

68.     The Defendant, Crane Co., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

69.     The Defendant, Crane Instrumentation & Sampling, Inc. f/k/a Circor Instrumentation Technologies, Inc. f/k/a Hoke Inc., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

70.     The Defendant, Crosby Valve, LLC, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

71.     The Defendant, Dana Companies LLC, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

72.     The Defendant, DeZurik, Inc., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

73.     The Defendant, Duquesne Light Company, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer and/or premises where Plaintiff, Charles W. Hilster, Jr.,  performed work.

74.     The Defendant, Eaton Hydraulics LLC, individually and as successor-by-merger to Eaton Hydraulics, Inc. as successor-in-interest to Vickers Inc., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

75.     The Defendant, Eckel Industries, Inc., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer, contractor and/or premises where Plaintiff, Charles W. Hilster, Jr., performed work.

76.     The Defendant, Electric Boat Corporation, a subsidiary of General Dynamics Corporation, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer and/or premises where Plaintiff, Charles W. Hilster, Jr.,  performed work.

77.     The Defendant, Electrolux Home Products, Inc., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

78.     The Defendant, Emerson Electric Co., individually and as successor-in-interest to Copeland Corporation, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

79.     The Defendant, Entergy Corporation, individually and as successor-in-interest to Entergy Nuclear Vermont Yankee, LLC, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer and/or premises where Plaintiff, Charles W. Hilster, Jr., performed work.

80.     The Defendant, Exelon Corporation, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer and/or premises where Plaintiff, Charles W. Hilster, Jr., performed work.

81.     The Defendant, Exelon Generation Company, LLC, a subsidiary of Exelon Corporation, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer and/or premises where Plaintiff, Charles W. Hilster, Jr., performed work.

82.     The Defendant, FirstEnergy Corp., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer and/or premises where Plaintiff, Charles W. Hilster, Jr., performed work.

83.     The Defendant, Flowserve Corporation f/k/a The Duriron Company, Inc., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

84.     The Defendant, FMC Corporation, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

85.     The Defendant, Foster Wheeler Energy Corporation, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

86.     The Defendant, General Dynamics Corporation, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer and/or premises where Plaintiff, Charles W. Hilster, Jr., performed work.

87.     Defendant, General Electric Company, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

88.     The Defendant, Goulds Pumps LLC, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

89.     The Defendant, Grinnell LLC d/b/a Grinnell Corporation, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

90.     The Defendant, IMO Industries, Inc., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

91.     The Defendant, ITT, LLC f/k/a ITT Corporation, ITT Industries Inc., ITT Fluid Products Corp., Hoffman Specialty Mfg. Corp., Bell and Gossett Company, and ITT Marlow, was

or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

92.     The Defendant, IU North America, Inc. as successor-by-merger to The Garp Company f/k/a The Gage Company f/k/a Pittsburgh Gage And Supply Company, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

93.     The Defendant MidAmerican Energy Company, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer and/or premises where Plaintiff, Charles W. Hilster, Jr., performed work.

94.     The Defendant Niantic Seal Inc., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

95.     The Defendant Niantic Seal RIP, Inc. f/k/a Niantic Seal Inc. f/k/a Niantic Rubber Company, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

96.     The Defendant, Pennsylvania Electric Company, a wholly-owned subsidiary of FirstEnergy Corp., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer and/or premises where Plaintiff, Charles W. Hilster, Jr., performed work.

97.     The Defendant, PSEG Nuclear LLC, a subsidiary of Public Service Enterprise Group Incorporated, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer and/or premises where Plaintiff, Charles W. Hilster, Jr., performed work.

98.     The Defendant, PSEG Power LLC, a subsidiary of Public Service Enterprise Group Incorporated, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer and/or premises where Plaintiff, Charles W. Hilster, Jr., performed work.

99.     The Defendant, Public Service Enterprise Group Incorporated, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer and/or premises where Plaintiff, Charles W. Hilster, Jr., performed work.

100.    The Defendant, Schneider Electric Systems USA, Inc. f/k/a Invensys Systems, Inc., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

101.    The Defendant, Seminole Electric Cooperative, Inc., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer and/or premises where Plaintiff, Charles W. Hilster, Jr., performed work.

102.    The Defendant, Sequoia Ventures, Inc. f/k/a Bechtel Corporation., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer, contractor and/or premises where Plaintiff, Charles W. Hilster, Jr., performed work.

103.    The Defendant, Spence Engineering Company, Inc., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

104.    The Defendant, The Goodyear Tire & Rubber Company, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

105.    The Defendant, The William Powell Company, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

106.    The Defendant, Tri-State Generation And Transmission Association, Inc., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer and/or premises where Plaintiff, Charles W. Hilster, Jr., performed work.

107.    The Defendant, Vermont Yankee Nuclear Power Corporation, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer and/or premises where Plaintiff, Charles W. Hilster, Jr., performed work.

108.    The Defendant, ViacomCBS Inc. f/k/a CBS Corporation, a Delaware corporation f/k/a Viacom, Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation and also as successor-in-interest to BF Sturtevant, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

109.    The Defendant, Viking Pump Inc., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

110.    The Defendant, Vistra Corp. f/k/a Vistra Energy Corp. as successor-in-interest to Dynegy, Inc., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products, or an employer and/or premises where Plaintiff, Charles W. Hilster, Jr., performed work.

111.    The Defendant, Warren Pumps LLC, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

112.    The Defendant, Weir Valves & Controls USA Inc., individually and as successor-in-interest to Atwood & Morrill Co., Inc., was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

113.     The Defendant, Yuba Heat Transfer LLC, was or is engaged in the business of manufacturing and/or supplying asbestos and asbestos-containing products.

114.     Plaintiff, Charles W. Hilster, Jr., was employed as a pipefitter, hydraulic pipefitter, new construction project manager, and maintenance supervisor by various employers at various premises from approximately 1957 to 1987 and 1989 to 1995.  Upon information and belief, during this period of time Plaintiff, Charles W. Hilster, Jr., worked at the following sites, including but not limited to:

       a.      Beaver Valley Nuclear Plant – Shippingport, PA
       b.      Peach Bottom Atomic Power Station – Harrisburg, PA
       c.      Shippingport Power Plant – Shippingport, PA
       d.      Salem Nuclear Power Plant – Salem County, NJ
       e.      Electric Boat – Groton, CT
       f.      Vermont Yankee Nuclear Power Station – Vernon, VT
       g.      Roseton Generating Station – Newburgh, NY
       h.      Craig Power Station – Craig, CO
       i.      Quad City Nuclear Plant – Cordova, IL
       j.      Seminole Generating Station – Palatka, FL

115.     Plaintiff, Charles W. Hilster, Jr., was employed as a project manager and maintenance supervisor by MJ Schneider Nuclear Power for the new construction of nuclear power units from approximately 1977 to 1987.  Upon information and belief, the Plaintiff went into the construction areas daily to inspect the work at various jobsites, including but not limited to:

       a.      Beaver Valley Nuclear Plant – Shippingport, PA
       b.      Craig Power Station – Craig, CO
       c.      Quad City Nuclear Plant – Cordova, IL

116.     Plaintiff, Charles W. Hilster, Jr., was employed as a maintenance supervisor at the Seminole Generating Station in Palatka, FL from approximately 1989 to 1995.  Upon information and belief, the Plaintiff supervised the maintenance of these united and was in the plant daily.

117.     While employed at these various jobsites, Plaintiff, Charles W. Hilster, Jr. wore his own clothes to work, was exposed to asbestos dust and fibers that he brought home on his work

clothes, fell off in his vehicle and were on his body including his hair, that distributed and re-entrained in his vehicle and home, which caused Plaintiff Shirley A. Hilster's mesothelioma.

118.    Plaintiff Shirley A. Hilster was exposed to asbestos through asbestos dust and fibers brought home on her husband's work clothes, from asbestos dust in his vehicle and asbestos dust on his body including his hair, and from the dust being distributed and re-entrained in their home. Her exposure to asbestos dust and fibers occurred through her contact with her husband's work clothing and person when greeting him at the end of his work day, through laundering his work clothing on a regular basis, through spending time in his vehicle in which asbestos dust and fibers had been deposited, and through sharing a home contaminated with asbestos fibers that were constantly being stirred up and re-entrained in the air that they breathed throughout their home.

119.    The Defendants were engaged in the business of mining and/or milling, manufacturing, distributing, supplying and/or using and/or recommending and/or installing and/or removing asbestos materials.

120.    The premise owners caused asbestos products to be used, sold or placed on their job site which the Defendants knew or should have known existed on the premises. The premise Defendants negligently failed to comply with its duties to the Plaintiff, Charles W. Hilster, Jr. to maintain their premises in a reasonably safe condition and/or to warn or protect the Plaintiff against the dangers on the premises. The Defendant premises owners breached this duty in the following manners:

> a.    The Defendants specified or contracted for the use of asbestos products, and also provided such products for use by co-workers of the Plaintiff and Plaintiff and further failed to restrict the use of asbestos products in their plants even after the Defendants knew or should have known of the dangers associated with work place exposure to airborne asbestos fibers;

18

b.     The Defendants, and each of them, knew, or with the exercise of reasonable care should have known, of the dangers associated with work place exposure to airborne asbestos fibers created by the sawing, cutting, application and other use of asbestos products, and by the demolition and tearing out of existing asbestos insulation and of asbestos products, components, and materials;

c.     The Defendants failed to take reasonable precautions or exercise due care to warn Plaintiffs of the danger and harm to which he was exposed while working in close proximity to asbestos insulations and other craftsman whose work activities created airborne asbestos fibers;

d.     The Defendants failed to provide Plaintiff with protective equipment and clothing to guard him from inhalation of asbestos fibers;

e.     The design, construction, maintenance, installation, placement or continued placement by failure to remove or render harmless asbestos products in the Defendants' facilities as identified above created an unreasonable risk of harm to the Plaintiff who was directed to work on the Defendants' premises; and,

f.     The Defendants failed to provide adequate inspection and supervision with regard to the activities of their employees and contractors and subcontractors involved in the use, disturbance or tearout of asbestos as aforesaid, after they had actual or constructive notice of the existence of unsafe working conditions on their premises arising from said asbestos products.

121.    At all times pertinent hereto, the Plaintiff, Charles W. Hilster, Jr. was a user and consumer of the asbestos and asbestos products manufactured and supplied by the Defendants.

122.    At all times pertinent hereto, the product or products manufactured, distributed, sold and supplied by the Defendant corporations reached the Plaintiffs without any substantial changes in the condition of the product or products from the time they were sold.

123.    On or about July 10, 2020, the Plaintiff, Shirley A. Hilster was advised that she was suffering from Mesothelioma.

**AS TO THE ABOVE-NAMED DEFENDANTS:**

## <u>FIRST CAUSE OF ACTION</u>
### NEGLIGENCE

124.     The above-named Defendants are liable to the Plaintiffs jointly and/or severally for

being generally negligent in failing to provide a safe product, and more specifically as follows:

a.     For carelessly and negligently installing, distributing, supplying, manufacturing and selling the said asbestos and asbestos containing products so as to cause injury to the Plaintiff;

b.     For carelessly and negligently creating and allowing a dangerous condition to exist by failing to properly package the said products;

c.     For carelessly and negligently allowing a dangerous condition by failing to inspect the packaging of the said products;

d.     For carelessly and negligently creating and allowing a dangerous condition by failing to provide proper instructions for handling said products;

e.     For failing to exercise the requisite degree of care and caution in the distribution, manufacture, supply and sale of the said products;

f.     For failing to warn and/or adequately warn of the dangers of the product or products when the Defendant corporations knew or should have known that the use and/or exposure to the product or products would cause disease and injury;

g.     For failing to take reasonable precautions to warn of the dangers to which Plaintiff, Charles W. Hilster, Jr., was exposed when the Defendants knew or should have known of the said dangers;

h.     In failing to warn the Plaintiff, Charles W. Hilster, Jr., what would be safe and sufficient wearing apparel for a person who is exposed to or using the said product or products;

i.     For negligently failing to inform the Plaintiff, Charles W. Hilster, Jr., of what would be safe, sufficient and proper

protective equipment and appliances when using or being
exposed to the products;

j.   For failing to test the products;

k.   For failing to remove the product from the market when the
Defendant corporations knew or should have known of the
hazards of exposure to the products;

l.   For failing to use substitute materials for the asbestos in the
asbestos-containing products;

m.   For failing to mark, label or otherwise identify and
distinguish during installation and subsequently those
products which contain asbestos;

n.   For failing to warn the Plaintiff's employer of the dangers
associated with the inhalation of asbestos fibers; and

o.   In negligently suppressing the dissemination of medical and
scientific information relating to the harmful effects of
exposure to asbestos and asbestos-containing products and
in prohibiting the publication of certain scientific and
medical articles.

125.   Plaintiff, Charles W. Hilster, Jr., was employed from 1957 by various employers
and on various premises, from 1957 through 1995. During the course of his employment he used
and thereby came into contact with asbestos and asbestos-containing products which were supplied
and used by the above-named Defendants. The Plaintiff was exposed to and did inhale asbestos
dust and asbestos fibers which covered his work clothes, his body and hair. During the course of
Plaintiff's employment, he was put in a position to be exposed to asbestos and asbestos containing
products of the above Defendants while performing his job duties. Plaintiff, Shirley A. Hilster's
asbestos disease manifested itself more than 300 weeks after her husband, Plaintiff Charles W.
Hilster's last occupational exposure to asbestos. Thus, this action against his employers does not
fall within the purview of the Workers' Compensation Act and therefore the exclusivity provisions

of Section 303(a) of the Act does not apply to preclude Plaintiff from filing a claim against the

above-named employers.

    a.    Purchased and maintained asbestos-containing products at the work sites for use by its employees and independent contractors;

    b.    Employees installed and removed various asbestos-containing products when they repaired and maintained equipment and piping systems without taking steps to minimize exposures to asbestos-containing products;

    c.    Specified the use of asbestos-containing products by their employees and independent contractors without requiring the use of appropriate precautions to minimize exposure to asbestos-containing products;

    d.    Failed to exercise reasonable care to adequately warn Plaintiff of the risks, dangers and harm to which he was exposed in working with, touching or inhaling toxic and/or pathogenic dusts including but not limited to asbestos;

    e.    Failed to minimize or eliminate Plaintiff, Charles W. Hilster, Jr.' exposure to dusts including but not limited to asbestos by ventilating with exhaust fans, dampening or wetting procedures and other recommended and available procedures to preclude exposures;

    f.    Failed to conduct any test to determine the presence and/or amount of toxic and/or pathogenic liquids, solids, fumes, vapors, mists, or gases, including but not limited to asbestos, in and around Plaintiff, Charles W. Hilster, Jr.;

    g.    Failed to advise Plaintiff, Charles W. Hilster, Jr. of the increased risk of pleural, pericardial or peritoneal mesothelioma, lung cancer, cancer of the gastrointestinal tract and non-malignant pleural and parenchymal abnormalities as well as asbestosis;

    h.    Carelessly and negligently allowing a dangerous condition by failing to inspect the packaging of the said asbestos products;

    i.    Failed to warn the Plaintiff what would be safe and sufficient wearing apparel for a person who is exposed to or using the said asbestos product or products;

j.      Negligently failed to inform the Plaintiff of what would be safe, sufficient and proper protective equipment and appliances when using or being exposed to the asbestos products;

k.      Negligently suppressed the dissemination of medical and scientific information relating to the harmful effects of exposure to asbestos and asbestos containing products and in prohibiting the publication of certain scientific and medical articles; and,

l.      Carelessly and negligently allowed hazardous conditions to exist by failing to provide a safe work place.

## SECOND CAUSE OF ACTION
### STRICT LIABILITY

126.    The Plaintiffs hereby incorporate by reference and make a part hereto Paragraphs 1 through 125 inclusive of the First Cause of Action.

127.    The above-named Defendants are strictly liable to the Plaintiffs as follows:

a.      For failure to properly, adequately and safely label the produce or products;

b.      For selling a product or products which were in a defective condition and unreasonably dangerous in their design and manufacture at the said time of sale;

c.      For selling a product or products which were in a defective condition because they were without all necessary elements to make them safe for use; and

d.      For selling a product or products that were in a defective condition and because of a failure to give adequate and complete warnings of the known or knowable dangers involved in the use and exposure to the product or products.

128.    The above-named Defendants are strictly liable to the Plaintiffs, Shirley A. Hilster and Charles W. Hilster, Jr., under the Restatement of Torts (Second) §402A and §402B.

## THIRD CAUSE OF ACTION
## GROSS, WILLFUL AND WANTON MISCONDUCT

129.    The Plaintiffs hereby incorporate by reference and makes a part hereto Paragraphs 1 through 128, inclusive of the First and Second Causes of Action.

130.    The Defendants are liable to the Plaintiffs, Shirley A. Hilster and Charles W. Hilster, Jr., for their gross, willful and wanton misconduct in knowingly and intentionally concealing and misrepresenting the dangerous characteristics of their asbestos products, as well as concealing the detrimental aspects of asbestos contained in its products to the Plaintiff Shirley A. Hilster's health and physical condition.

## FOURTH CAUSE OF ACTION
## CONSPIRACY, CONCERT OF ACTION DAMAGES
## AS TO DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY

131.    Plaintiffs hereby incorporate by reference Paragraphs 1 through 130 inclusive, as if each of those paragraphs were set forth fully hereunder.

132.    Beginning in the late 1920's, conspirators including Defendant Metropolitan Life Insurance Company ("Met Life"), as well as Johns-Manville, Raybestos-Manhattan and others, undertook a duty to conduct research on asbestos-related health problems and to inform the public about any health risks that could be associated therewith.  In or about 1929, Met Life, through its agents and employees acting within the scope of their agency and employment, including but not limited to Dr. Anthony J. Lanza ("Lanza"), began an investigation of asbestos-related health hazards.  In 1935, this study was altered by Lanza, with the full knowledge of Met Life, at the request of and in concert with the asbestos industry in order to wrongly influence the United States Public Health Service, the United States medical community and various state legislatures.

133.    Thereafter, Defendant Met Life through the acts and omissions of its employees, most notably Lanza, undertook a series of activities with various members of the asbestos industry

including but not limited to Johns-Manville, Raybestos-Manhattan/ Raymark Industries, Inc., United States Gypsum, American Brake Blok/Abex, and others to suppress and misrepresent the dangers of exposure to asbestos dust to employees of Met Life's insureds and the general public and the medical community.

134.     The conspirators through their agent, Lanza of Met Life, made a concerted effort to discredit and to terminate the experiments of certain scientists who were developing data of profound importance for the area of public health in relation to the cancer hazard which existed for workers and bystanders in the asbestos industry.

135.     As a direct and proximate result of Met Life's intentional publication of deceptive and misleading medical data and information, and other conspiratorial acts and omissions, Defendant caused asbestos to be used in the occupational settings from which Plaintiff, Charles W. Hilster, Jr. breathed asbestos dust which resulted in Plaintiff's injuries.  Defendant Met Life, through its agents and employees and officers, aided and abetted and gave substantial assistance to Johns-Manville and Raybestos-Manhattan in their tortious selling of asbestos products and voluntarily undertook a duty to warn the United States Public Health Service, the medical community, and others about the danger of asbestos and consciously and negligently misrepresented the dangers of asbestos to the United States Public Health Service, the medical community, and others, all to the ultimate harm of Plaintiff herein.

136.     Defendant Met Life rendered substantial aid and assistance to the manufacturers of asbestos-containing products to which Plaintiff, Charles W. Hilster, Jr. was exposed, and such assistance by Met Life aided and abetted the negligence and the marketing of unreasonably dangerous asbestos-containing products by such manufacturers which proximately caused Plaintiff's illness.

137.   In both conducting tests and in publishing their alleged results, Met Life failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos.  Met Life also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

138.   Plaintiff, Charles W. Hilster, Jr. unwittingly and justifiably relied upon the thoroughness of Met Life's tests and information dissemination, the results of which Met Life published in leading medical journals.

139.   As a direct and proximate contributing result of Met Life's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to Plaintiff from asbestos exposure was increased, and (ii) Plaintiff suffered the injuries described herein.

140.   In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; and in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the other Defendants materially to understate the hazards of asbestos exposure, all for its own profit and gain, Met Life acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including Plaintiff, Charles W. Hilster, Jr.

141.   Additionally and alternatively, as a direct and proximate result of Met Life's actions and omissions, Plaintiff, Charles W. Hilster, Jr. was caused to remain ignorant of all the dangers of asbestos resulting in Plaintiff's wife, his co-workers, his family, and the general public to be unaware of the true and full dangers of asbestos, depriving Plaintiff of the opportunity to decide for himself whether he wanted to take the risk of being exposed to asbestos, denied Plaintiff the

opportunity to take precautions against the dangers of asbestos and proximately caused Plaintiffs'
damages herein.

142.    During the relevant time period the Plaintiff, Charles W. Hilster, Jr. was exposed
to and did inhale and/or ingest asbestos dust, fibers, and particles, which dust, fibers, and particles
came from the asbestos or asbestos-containing products which were mined, milled, manufactured,
fabricated, supplied, and/or sold by the Johns Manville and/or Raybestos/Raymark.

143.    Defendant, Met Life, together with Manville, Raymark and other persons and
entities, known and unknown at times relevant hereto, engages in a conspiracy or concert of action
to inflict injury on the Plaintiff, Charles W. Hilster, Jr., and to withhold, alter, suppress and
misrepresent information about the health effects of asbestos exposure.  One or more of said
conspirators did cause tortious injury to the Plaintiff or his wife in the course of or as a consequence
of the conspiracy of concert of action.  At least the following enumerated acts were undertaken by
the conspirators in the course of and in furtherance of the conspiracy or concert of action:

   a.  In 1932, Met Life, through Lanza and others, assisted Manville with
       medical examinations of over 1,000 employees of Manville's factory in
       Manville, New Jersey.   The report of this study shows that a large
       percentage of the employees suffered from asbestosis including employees
       not directly involved in the manufacturing process.  This 1932 medical
       survey was not published in the medical literature and, therefore, was
       unavailable to scientists studying the issue of asbestos-related disease.
       Further collaboration between Manville and Met Life continued the cover-
       up.

   b.  Beginning in approximately 1934, Manville, through its agents, Vandiver
       Brown and Attorney J.C. Hobart, suggested to Lanza, Associate Director of
       Met Life, which was then insurer of Manville and Raymark, that Lanza
       publish a study on asbestosis in which Lanza would affirmatively
       misrepresent material facts about the health consequences of asbestos
       exposure.  This was accomplished through intentional deletion of Lanza's
       description of asbestosis as 'fatal' and through other selective editing that
       affirmatively misrepresent asbestosis as a disease process less serious than
       it actually is and was known to be.  As a result, Lanza's study was published
       in the medical literature in this misleading fashion in 1935.   The
       conspirators were motivated, in part, to effectuate this fraudulent

27

misrepresentation and fraudulent nondisclosure by the desire to influence proposed legislation to regulate asbestos exposure and to provide a defense in lawsuits involving Manville, Raymark, and Met Life as insurer. Furthermore, upon information and belief, it is alleged that Met Life, at all times relevant hereto, had substantial monetary investments in Manville and Raymark, among other asbestos product manufacturers and distributors.

c.   In 1936, the conspirators or some of them entered into an agreement with the Saranac Laboratories.   Under this agreement, these conspirators acquired the power to decide what information Saranac could publish about asbestos disease and to control in what form such publications would occur. This agreement gave these conspirators power to affirmatively misrepresent the results of the work at Saranac, and also gave these conspirators power to material facts included in any study.  On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data, resulting in numerous misstatements of fact being made at scientific meetings.

d.   By November 1948, or earlier, Manville, Met Life (acting through Lanza), Raymark, and others decided to exert their influence to materially alter and misrepresent material facts about the substance of research started by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936.   Dr. Gardner's research involved carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then-existing standards of dust exposure for asbestos and asbestos products.

e.   At a meeting on November 11, 1948, these conspirators and others intentionally and affirmatively determined that Dr. Gardner's work should be edited to specifically delete material facts about the cancer-causing propensities of asbestos and the health effects of asbestos on humans and they determined that only an edited version would be published.  These conspirators thereby fraudulently misrepresented the risks of asbestos exposure to the public, in general, and to the class of persons exposed to asbestos, including the Plaintiff, Charles W. Hilster, Jr..

f.   As a direct result of influence exerted by the above described conspirators, Dr. Arthur Vorwald published Dr. Gardner's edited work in the Journal of Industrial Hygiene, AMA Archives of Industrial Hygiene and Occupational Health in 1951 in a form that stressed those portions of Dr. Gardner's work that the conspirators wished stressed, but which omitted references to human asbestosis and cancer, thereby fraudulently and affirmatively misrepresenting the extent of the risks.  The conspirators affirmatively and deliberately disseminated this misleading Vorwald publication to universities, libraries, government officials, agencies and others.

g.  Such action constituted a material affirmative misrepresentation of the material facts involved in Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was a less serious health concern than Dr. Gardner's unedited work indicated.

h.  For many decades, Met Life, individually, jointly and in conspiracy with Manville and Raymark, have been in possession of medical and scientific data, literature, and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary foreseeable use of said asbestos-containing products and/or machinery requiring or calling for the use of asbestos or asbestos-containing products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly.

i.  Despite the medical and scientific data, literature and test reports possessed by and available to Met Life, individually and in conspiracy with Manville and Raymark, Fraudulently, willfully and maliciously withheld, concealed and suppressed said medical and scientific data, literature and test reports regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases from Plaintiff who using and being exposed to Manville or Raymark asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products; caused to be released, published and disseminated medical and scientific data, literature and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma and other illnesses and diseases, which Metropolitan, Manville and Raymark knew were either incorrect, incomplete, outdated and misleading; distorted the results of medical examinations conducted upon workers who were using asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and being exposed to the inhalation of asbestos dust and fibers by falsely stating and/or concealing the nature and extent of the harm which workers suffered; and failed to adequately warn the Plaintiff of the dangers to which he was exposed when they knew of the dangers.

j.  By the false and fraudulent representations, omissions, failures, and concealments set forth above, Met Life, Manville and Raymark, individually, jointly, and in conspiracy with each other, intended to induce the Plaintiff to rely upon said false and fraudulent representations, omissions, failures, and concealments, to continue to expose themselves to the dangers inherent in the use of and exposure to their asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products. Said misrepresentations were false, incomplete, and misleading and constitute negligent misrepresentations as defined by Sections 311 and 522 of the Restatement (Second) of Torts.

29

144.    Plaintiff, Charles W. Hilster, Jr. reasonably and in good faith relied upon the false and fraudulent representations, omissions, failures, and concealments made by Met Life, Manville, and Raymark regarding the nature of their asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

145.    As a direct and proximate result of the conspiracy and concert of action between Met Life, Manville and Raymark, the Plaintiff, Charles W. Hilster, Jr. has been deprived of the opportunity of informed free choice and connection with the use of and exposure to Manville and Raymark's asbestos and asbestos-containing products, and therefore continued to work with and be exposed to the co-conspirator corporation's asbestos and asbestos-containing products and as a result brought home on his clothes, hair, shoes, and in his case asbestos dust or fibers contracted asbestos-related diseases and other conditions, and/or aggravated pre-existing conditions, as a result of which the Plaintiffs have been damaged.

WHEREFORE, Plaintiffs have been damaged and claim damages of the defendants, jointly and severally, in an amount in excess of One Hundred Thousand ($100,000.00) Dollars, which is in excess of the arbitration jurisdiction of the Court of Common Pleas of Allegheny County, Pennsylvania.

## DAMAGES

146.    As a result of the negligence, strict liability, gross, willful and wanton misconduct and intentional acts of the Defendant corporations, the Plaintiff, Shirley A. Hilster, has suffered the following injuries:

a.    Mesothelioma;

b.    Other severe and disabling diseases.

147.    As a result of the injuries and diseases suffered by the Plaintiff, Shirley A. Hilster has suffered the following damages:

a.     Plaintiffs have in the past and will in the future be required to expend large sums of money in an effort to restore Plaintiff, Shirley A. Hilster's health;

b.     Plaintiffs have in the past and will in the future be required to expend large sums of money for medical treatment and drugs in an effort to maintain Plaintiff, Shirley A. Hilster's health;

c.     Plaintiffs have in the past and will in the future suffer great pain, suffering and inconvenience;

d.     Plaintiffs have in the past and will in the future suffer a loss of enjoyment of life;

e.     Plaintiffs have in the past and will in the future suffer a loss of earning capacity;

f.     Plaintiff, Shirley A. Hilster has suffered a shortening of her life span and longevity.

## <u>LOSS OF CONSORTIUM</u>

148.    Plaintiffs incorporate the aforementioned paragraphs by reference as though fully set forth herein.

149.    As a direct and proximate result of the carelessness, negligence and recklessness of the Defendants and of the aforesaid injuries to his wife, Plaintiff Shirley A. Hilster, the Plaintiff, Charles W. Hilster, Jr., has been damaged as follows:

a.     Said Plaintiff, Charles W. Hilster, Jr., has been and will continue to be deprived of the services, society and companionship of his wife, Plaintiff Shirley A. Hilster;

b.     Said Plaintiff, Charles W. Hilster, Jr., has been required and may continue to be required to spend money for medicine, medical care, nursing, hospital and surgical attention; medical appliances and household care for the treatment of his wife, Plaintiff Shirley A. Hilster.

**WHEREFORE,** Plaintiffs demand judgment against each of the Defendants in an amount in excess of the jurisdiction of the Compulsory Board of Arbitrators of this county.

**JURY TRIAL DEMANDED AS TO ALL COUNTS:**

Respectfully submitted,

**CAROSELLI, BEACHLER & COLEMAN**

Craig E. Coleman, Esquire
PA State Bar #39391
20 Stanwix Street, Suite 700
Pittsburgh, PA 15222
(412) 391-9860

and

**DEAN OMAR BRANHAM, LLP**
302 N. Market Street, Suite 300
Dallas, Texas 75202
(214) 722-5990
(214) 722-5991 (Fax)
Benjamin D. Braly, Esq.
TX State Bar No. 24047574
(To Be Admitted *Pro Hac Vice*)
Jessica M. Dean, Esquire
TX State Bar No. 24040777
(To Be Admitted *Pro Hac Vice*)

**ATTORNEYS FOR PLAINTIFFS**

## **VERIFICATION**

I hereby depose and state that I am a Plaintiff in the above-captioned action, and that the statements of fact contained in the foregoing Complaint are true and correct to the best of my knowledge, information and belief and are made subject to the penalties of 18 PA. CONS. STAT. ANN. §4904 relating to unsworn falsification to authorities.

Date: 9-2-2020

Shirley A. Hilster

Charles W. Hilster, Jr.