IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHIRLEY A. CARPIN, as Executor of the Estate of SHIRLEY A. HILSTER, deceased, and CHARLES W. HILSTER, JR., Individually, <br><br> Plaintiff, <br><br> v. <br><br> AIR & LIQUID SYSTEMS CORPORATION, individually and as successor-in-interest to Buffalo Pumps, Inc., et al. <br><br> Defendants. | Civil Action No. 2:20-CV-15370-MJH |

**MOTION OF DEFENDANT AIR & LIQUID SYSTEMS
CORPORATION FOR SUMMARY JUDGMENT**

Defendant Air & Liquid Systems Corporation, successor-by merger to Buffalo Pumps, Inc. (collectively, "Buffalo") respectfully moves as follows pursuant Federal Rule of Civil Procedure 56 for entry of summary judgment in its favor against all parties:

1. Buffalo is a manufacturer of centrifugal pumps.

2. There is no allegation in this case that Shirley Hilster ever herself ever encountered a Buffalo pump. Rather, plaintiffs allege Mrs. Hilster developed mesothelioma from "take-home" exposure to asbestos dust brought home on the work clothes of her husband, Charles W. Hilster, Jr., and that she died from that disease.

3. The only witness in this case as to any asbestos Mr. Hilster encountered at work was Mr. Hilster himself, who was deposed in the case. Relevant transcripts of his deposition are Exhibits B, C, D and E in support of this motion.

4. Mr. Hilster testified that the only place he encountered Buffalo pumps was while he was employed at General Dynamics' Electric Boat Division ("Electric Boat") in Groton,

1

Connecticut, where he worked from 1957 until 1970 as an apprentice pipefitter, pipefitter and supervisor.

5. Mr. Hilster testified that, while employed by Electric Boat, he performed or supervised work of some type on 21 Navy nuclear submarines. Some of that work involved pumps. While he recalled that some of the pumps he encountered were made by Buffalo, he could not say on which ship or ships that might have occurred, nor could he describe any Buffalo pump.

6. As a pipefitter, Mr. Hilster was not trained to and did not open or perform any work on the internal parts of pumps. While pumps were not included in his normal work routine, he recalled at times having to connect or disconnect them, a process involved bolting or unbolting flanged connections between the pump and the ship's piping or systems. The metal flange faces were sealed with gaskets, which might be removed or reinstalled in the process.

7. Mr. Hilster could not recall actually working on a Buffalo pump, other than to suggest that any such work would have been limited to disconnecting the pump from adjacent piping.

8. Mr. Hilster, plaintiffs' expert retired Navy Captain R. Bruce Woodruff, and longtime Buffalo employee Martin Kraft addressed issues relating to the gaskets that were used by the Navy to seal between the external flanges and other piping on submarines. Captain Woodruff's deposition is Exhibit F and Mr. Kraft's declaration is Exhibit A to this motion.

9. The external gaskets were dictated by the shipyard's plans, rather than by any specification or manual from pump makers, and the gasket material used by the Navy varied with the temperature of the application and the type of liquid being handled.

10. For most of the submarines Mr. Hilster recalled having worked on, any pumps Buffalo supplied were associated with lithium bromide systems air conditioning systems and

used non-asbestos cork or rubber gaskets.

11. Buffalo did not supply external gaskets, either with original pumps or on a replacement basis. Rather, external gaskets were of standard sizes and were detailed in the piping drawings prepared by the shipbuilder. The shipyard obtained the gaskets from sources other than pump manufacturers.

12. Because it did not supply them, and because they did not impact the performance of the pump units it supplied, Buffalo did not know what kind of of gaskets the Navy or shipbuilders would use to seal between outside of the Buffalo pump assemblies and other piping or systems on the ship.

13. Mr. Hilster confirmed that only some of the gaskets used at Electric Boat to seal between pumps and piping contained asbestos. When performance testing Navy pumps in its own facility, Buffalo used non-asbestos rubber gaskets to seal between the pumps and the piping of the test equipment.

14. Captain Woodruff, Mr. Kraft and retired Navy Rear Admiral David P. Sargent, Jr. described in detail the process by which Buffalo supplied any pumps for nuclear submarines Mr. Hilster recalled working on. Admiral Sargent's declaration is Exhibit G to this motion. That process consisted of the following:

   a. the Navy issued detailed specifications – called Military Specifications, or MILSPECS – listing the requirements for the design of the pumps and for the form and content of all documentation associated with them;

   b. the Navy required that it pre-approve all design features of the pumps through the review of proposed technical drawings submitted by Buffalo;

   c. Buffalo submitted such proposed drawings;

   d. the Navy, after dictating changes and revisions it deemed appropriate, which Buffalo incorporated, approved the drawings and the designs they depicted;

    e.  The Navy also required that it pre-approve both the form and all content of technical manuals and other documentation;

    f.  Buffalo submitted proposed documentation for review by the Navy;

    g.  the Navy, in the course of back-and-forth with Buffalo, dictated revisions to the documentation and ultimately, subject to incorporation of those revisions by Buffalo, accepted the documentation;

    h.  the Navy, through a series of in-plant and post-delivery inspections and testing, verified that the pumps and documentation delivered to it complied in full with its specifications and conformed to the approved drawings and documentation.

Relevant MILSPECs for pumps, technical manuals and drawings are Exhibits H, I and J to this motion.

    15.  At the time it procured pumps from Buffalo for installation aboard nuclear submarines at Electric Boat, the Navy had been aware of the potential for asbestos hazards to its personnel for decades. Indeed, research by retired former Navy officer and physician Dr. Samuel A. Forman in Navy and other historical archives documents that, at least by the early 1940s, the Navy had become a leader in the field of occupational medicine relating to asbestos dust inhalation exposure. That knowledge continued expand during the later 1940s, 1950s and 1960s as a result of internal meetings and seminars, further investigation of products, testing of airborne exposure, documentation and monitoring of asbestos-related disease among Navy and shipyard personnel, and promulgation of numerous health standards and prescribed work practices. Dr. Forman's declaration is Exhibit K to this motion.

    16.  There is no evidence that Buffalo was aware, during the time Mr. Hilster worked at Electric Boat, of any potential hazard associated with exposure to asbestos.

    17.  In their First Amended Complaint (ECF Document 219), plaintiffs have alleged against Buffalo the following (often overlapping) causes of action:

    * First – Negligence

      \* Second – Strict Liability

      \* Third – Breach of Implied Warranty

      \* Sixth – Gross Negligence; Willful, Wanton, and Reckless Conduct

      \* Seventh – False Representation

      \* Eight – Failure to Warn

      \* Eleventh – Wrongful Death

      \* Twelfth – Survival Action

18. Maritime law applies to this case because the pumps were delivered from Buffalo to the shipyard. They were worked on by Navy and Electric Boat personnel. All written documentation regarding the pumps was delivered to the shipyard, and used by Navy and Electric Boat personnel there.

19. Maritime law routinely is applied to claims arising out of injuries allegedly resulting from work, like that performed by Mr. Hilster, on ships being built or repaired in shipyards.

20. Maritime law also governs claims arising out of actions aboard ships in navigable waters, whether or the injuries occurred on the water or on land.

21. Summary judgment is appropriate where there exists no genuine issue as to any material fact and that Buffalo is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The material facts outlined above are not in meaningful dispute, and application of the applicable law to those facts demonstrates that Buffalo is entitled to summary judgment for the reasons set forth below.

22. First, under *Air & Liquid Systems Corp. v. DeVries*, 139 S. Ct. 986 (2019), Buffalo is not liable for injuries resulting from exposure to asbestos gaskets it neither manufactured nor supplied, which were acquired and used by the Navy to seal between Buffalo pumps and piping

or other systems aboard Navy submarines. Such liability requires, *inter alia*, that plaintiffs prove one of the following:

- that the equipment manufacturer personally specified or directed the use of the third-party product with its equipment;
- that the defendant incorporated an asbestos-containing wear-item in its equipment, knowing that it would be necessary to replace it with an identical or similar asbestos-containing product; or
- that the defendant's equipment could not function without the use of the asbestos-containing product.

23. The undisputed evidence shows that the choice of gasket material used to seal between any Buffalo pumps on the submarines Mr. Hilster recalled and the vessels' piping or other systems was made not by Buffalo, but, instead by either the Navy or Electric Boat; that Buffalo did not provide the external gaskets and was not aware what types of gaskets the Navy selected; and that non-asbestos gaskets were routinely used on external pump flanges on the submarines.

24. Second, maritime law does not impose on Buffalo a duty to Mrs. Hilster with respect to "take-home" exposure to third-party gaskets obtained by the Navy to seal spaces between Buffalo pumps and piping or other systems on submarines on which Mr. Hilster worked at Electric Boat.

25. Third, even if maritime law might be construed so as to permit holding Buffalo liable for injuries caused by "take-home" exposures to third-party products encountered by her husband, plaintiffs cannot prove that exposure in fact occurred at a level sufficient to have been a cause of Mrs. Hilster's disease in light of the lack of any evidence regarding the nature or

frequency of Mr. Hilster's encounters with Buffalo pumps or, indeed, whether those encounters involved asbestos containing gaskets at all.

26. Fourth, Buffalo supplied pumps and accompanying documentation for installation aboard Navy ships under circumstances that entitle it to the government contractor defense recognized by the Supreme Court in *Boyle v. United Technologies Corporation*. 487 U.S. 500, 512 (1987). That defense protects contractors from liability for design defects in military equipment when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

27. In addition, military contractors are immune from liability for failing to warn of alleged risks associated with their equipment where the United States exercised its discretion and approved the warnings, if any; (2) the contractor provided warnings that conformed to the approved warnings; and (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not. ." *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995); *see also, e.g., Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 814 (3d Cir. 2016).

28. Buffalo's evidence establishes each of the elements of the government contractor defense as to plaintiffs' claims based on alleged design defects and alleged failure to warn. Both Buffalo's pumps and all accompanying documentation were subject to reasonably precise MILSPECs, inspected and reviewed in detail by Navy personnel who exercised discretion in ensuring their compliance with those specifications, subject to substantive back-and-forth between Buffalo and the Navy, and ultimately accepted by the Navy as complying fully with all

<215>

specifications.  In the course of these processes, Buffalo did not withhold from the Navy any information regarding the asbestos-related hazards plaintiffs allege.  Indeed, while the Navy was at all relevant times extremely knowledgeable regarding asbestos as a potential hazard to its personnel, there is no evidence that Buffalo was aware of any information on that topic at point during Mr. Hilster's employment at Electric Boat.

29.  Fifth, plaintiffs may not recover punitive or other nonpecuniary damages from Buffalo.  Maritime precedent does not support imposition of punitive damages for products liability claims such as those plaintiffs' assert in this case.

30.  Moreover, Buffalo's allegedly tortious conduct – *i.e.*, the supply of pumps for a Navy warship – occurred pursuant to military direction and oversight, and there is no evidence Buffalo acted with actual knowledge of the alleged defective condition of its pumps.  Consequently, Buffalo's conduct did not rise to the level of "willful, wanton, grossly negligent or unconscionable" that would be necessary for imposition of punitive damages under maritime law.

31.  Nor does maritime law permit recovery of damages for pain and suffering or loss of consortium.

32.  In further support of this motion, Buffalo incorporates herein its accompanying memorandum of law and exhibits.

WHEREFORE, Buffalo respectfully requests that the Court enter an Order in the proposed form attached.  Buffalo respectfully requests argument on this motion to the extent that it is contested by any party.

specifications.  In the course of these processes, Buffalo did not withhold from the Navy any information regarding the asbestos-related hazards plaintiffs allege.  Indeed, while the Navy was at all relevant times extremely knowledgeable regarding asbestos as a potential hazard to its personnel, there is no evidence that Buffalo was aware of any information on that topic at point during Mr. Hilster's employment at Electric Boat.

29.  Fifth, plaintiffs may not recover punitive or other nonpecuniary damages from Buffalo.  Maritime precedent does not support imposition of punitive damages for products liability claims such as those plaintiffs' assert in this case.

30.  Moreover, Buffalo's allegedly tortious conduct – *i.e.*, the supply of pumps for a Navy warship – occurred pursuant to military direction and oversight, and there is no evidence Buffalo acted with actual knowledge of the alleged defective condition of its pumps.  Consequently, Buffalo's conduct did not rise to the level of "willful, wanton, grossly negligent or unconscionable" that would be necessary for imposition of punitive damages under maritime law.

31.  Nor does maritime law permit recovery of damages for pain and suffering or loss of consortium.

32.  In further support of this motion, Buffalo incorporates herein its accompanying memorandum of law and exhibits.

WHEREFORE, Buffalo respectfully requests that the Court enter an Order in the proposed form attached.  Buffalo respectfully requests argument on this motion to the extent that it is contested by any party.

Respectfully submitted,

**WILBRAHAM, LAWLER & BUBA**

By: */s/ Jennifer E. Watson*
Jennifer E. Watson, Esquire (I.D. No. 78664)
603 Stanwix Street Suite 17 North
Pittsburgh, PA 15222
jwatson@wlbdeflaw.com
412-255-0500
Attorney for AIR & LIQUID SYSTEMS CORPORATION, SUCCESSOR BY MERGER TO BUFFALO PUMPS, INC.

9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHIRLEY A. CARPIN, as Executor of the Estate of SHIRLEY A. HILSTER, deceased, and CHARLES W. HILSTER, JR., Individually, <br><br> Plaintiff, <br><br> v. <br><br> AIR & LIQUID SYSTEMS CORPORATION, individually and as successor-in-interest to Buffalo Pumps, Inc., et al. <br><br> Defendants. | Civil Action No. 2:20-CV-15370-MJH |

## CERTIFICATE OF SERVICE

I hereby certify that February 15, 2022, I electronically filed the foregoing Motion of Defendant Air & Liquid Systems Corporation for Summary Judgment with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have thereby electronically served this document upon all counsel of record who are registered with the Court's CM/ECF system.

/s/ Jennifer E. Watson
Jennifer E. Watson, Esquire
Counsel for Defendant,
Air & Liquid Systems Corporation, successor by merger to Buffalo Pumps, Inc.