IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHIRLEY A. CARPIN, as Executor of the Estate of SHIRLEY A. HILSTER, deceased, and CHARLES W. HILSTER, JR., Individually, <br><br> Plaintiff, <br><br> v. <br><br> AIR & LIQUID SYSTEMS CORPORATION, individually and as successor-in-interest to Buffalo Pumps, Inc., et al. <br><br> Defendants. | Civil Action No. 2:20-CV-1537 |

**REPLY BRIEF IN SUPPORT OF DEFENDANT WARREN PUMPS, LLC'S MOTION FOR SUMMARY JUDGMENT**

### I. INTRODUCTION

Warren Pumps ("Warren") moved for Summary Judgment because Plaintiffs cannot sustain their burden of proof to demonstrate that the decedent, Mrs. Shirley Hilster, inhaled asbestos fibers from a product manufactured, distributed or supplied by Warren, and therefore, under maritime law, cannot prove that any such alleged exposure was a "substantial contributing factor" of Mrs. Hilster's mesothelioma. Moreover, Warren is immune from suit under the government contractor defense. Plaintiffs filed their Opposition to Warren's Motion, urging that Connecticut law applies to the case. *See* Doc. No. 376. However, regardless of whether maritime or Connecticut law applies, Plaintiffs still have not met her burden of proof on causation, nor do they create a question of fact as to Warren's affirmative government contractor defense. Because Plaintiffs' evidence does not create a genuine issue of material fact, Warren's Motion for Summary Judgment should be granted for the reasons outlined below.

1

A. **Contrary to Plaintiffs' Assertions, Maritime Law Applies to Adjudicate the Rights of the Parties, not Connecticut Law**

In their opposition, Plaintiffs assert that Connecticut, and not maritime law, applies to this case, but Plaintiffs fail to rebut or even address Warren's arguments under *Grubart v. Great Lakes Dredge Co., et al.*, 523 U.S. 527 (1995) and *Sisson v. Ruby*, 497 U.S. 358 (1990), though they seemingly agree that these two U.S. Supreme Court cases provide controlling law on the issue. *See*, Doc. No. 376 at p. 12. Rather, they focus mostly on the unpublished U.S. District Court decision in *Coach v. Armstrong Intern. Inc.*, No. CIV.A. 2:12-60180-ER, 2014 WL 7404840 (E.D. Pa. Sept. 25, 2014). In concluding that state law applies, the *Coach* decision lacks any real analysis, simply noting that the Plaintiff's laundry work was "land-based," and comparing it to the *Willis* case in *Conner v. Alfa-Laval, Inc.*, 799 F. Supp. 2d 455 (E.D. Pa. 2011). But *Willis* involved a machinist at Philadelphia Naval Shipyard who principally performed land-based repairs to equipment. *Conner* at p. 460. Here, on the other hand, the Warren pumps, and the alleged work on them, was undisputedly on Naval vessels, and therefore, is more analogous to the situation in *Sisson*. Just like in *Sisson*, where a shipboard fire spread to a land-based marina, the claim here is that shipboard work on Warren pumps spread from the Naval vessels to Mrs. Hilster's home via her husband's work clothes. The U.S. Supreme Court rightly found that maritime law should apply in *Sisson*, and this court should follow that controlling precedent and apply maritime law here.

In arguing that Connecticut has the most significant interest in the outcome of this litigation, Plaintiffs ignore all of the other states where Mrs. Hilster lived throughout the course of her husband's itinerant career, including New York, Pennsylvania, New Hampshire, Florida, and Colorado. Instead, they focus on Connecticut, where Mrs. Hilster lived for some, but not all, of the time that Mr. Hilster worked for General Dynamics. In fact, during the time of the alleged exposure to asbestos from Warren pumps, Mr. Hilster and his family moved up to Portsmouth,

2

New Hampshire for three months in 1961, while Mr. Hilster worked aboard Naval submarines at the Portsmouth Naval Shipyard in Kittery, Maine.  Yet Plaintiffs do not argue that New Hampshire law or Maine law should apply to this case. While the Hilsters could (and did) move from state to state, the Navy submarines on which the Warren pumps at issue were installed were always under the jurisdiction of maritime law. In this case, the only constant running throughout Plaintiffs' claimed exposure to asbestos from Warren pumps is that the Warren pumps were installed aboard Navy submarines. Because of this fact, for the purposes of certainty and predictability of the result for this case and the next one similar to it, Warren urges the court to apply maritime law here.

**B.      Plaintiffs' Opposition Fails to Establish that Warren is Liable for any After-Applied External Insulation or Flange Gaskets under Maritime Law or Connecticut Law**

In opposing Warren's motion for summary judgment, Plaintiffs attempt to mislead the court by conflating the types of products at issue, and by misstating the law and the factual record before the court.

Warren moved for summary judgment arguing that it had no liability for the external flange gaskets that the shipyard used to install Warren's pumps on the Navy submarines.  Although Mr. Hilster did not recall if any of the Warren pumps he encountered were insulated, Warren also moved on the same grounds with respect to any external insulation that the shipyard may have put on the outside of its pumps. Warren did not make or sell either the flange gaskets or any external insulation that the shipyard used.   In their opposition, Plaintiffs suggest that under maritime law, Warren should be held liable for these after-applied asbestos flange gaskets and external insulation because it "included these asbestos materials in its drawings, sold most of its pumps with asbestos gaskets, knew they would have to be replaced periodically, and supplied asbestos gaskets as replacement parts." *See*, Doc. No. 376 at p. 15-16*.*  There is, however, no evidence that Warren

3

provided these external after-applied parts for any of the pumps at issue in this case or listed these parts in any of its drawings.

In an effort to support their claims, Plaintiffs conflate the external parts, not made or sold by Warren, with internal components that Mr. Hilster never came in contact with and for which there is no claim of exposure. The pumps Warren manufactured and sold for installation aboard the Naval submarines at issue here were sold with *internal* seals, including gaskets and sometimes packing, some of which contained asbestos. These seals are internal to the metal housing of the pump, and are reflected on Warren's drawings. Warren's pumps for the Naval submarines at issue were not sold with any *external* flange gaskets (gaskets that connect the pump to piping system) or insulation of any kind, external or otherwise. It is uncontroverted that Mr. Hilster did not work on the *internal* components (the internal gaskets or packing) of a Warren pump at any time, which Mr. Hilster conceded – rather, Plaintiffs have alleged that he worked on the *external* flange gaskets and insulation, products that Warren did not sell at any time for any ship at issue here.[1] These *external* flange gaskets and insulation also are *not* listed on any Warren drawing for any pump installed aboard any submarine that Mr. Hilster worked on. Plaintiffs tellingly do not point to these *external* flange gaskets and insulation on an actual Warren drawing, because that drawing does not exist in this case.[2]

---

[1] Doktor Decl. [Exh. 7] at ¶ 16. Plaintiffs' Opposition uses terms like "removing gaskets from" and "utilized asbestos gaskets…in their design and manufacturing" to incorrectly infer that Mr. Hilster's gasket work at Electric Boat involved the internal components of a pump. It did not. Plaintiffs also point to the supply of replacement gaskets and spares, due to wear, in an effort to imply that Warren supplied the external flange gaskets that Mr. Hilster worked with here. Those citations however do not relate to any pump at issue here and they do not relate to external flange gaskets generally. They show limited instances where Warren has supplied internal gasket and spares for pumps not at issue here.

[2] The two cases cited by Plaintiffs on this issue are inapplicable, as Plaintiffs allege that in both cases, the defendant "specified" the asbestos components at issue in its drawings, where the alleged asbestos components at issue here are not even listed on any drawings. *See Dennis v. Air*

In summary, Plaintiffs have failed to show that as it relates to the asbestos external insulation and flange gaskets Plaintiffs allege that Mrs. Hilster was exposed to, that: (i) Warren directed that they be incorporated; (ii) Warren included them in the original pump design knowing they would be replaced; or (iii) Warren's pumps would be useless without them. *DeVries*, 139 S.Ct 986, 996. Under maritime law, Warren has no duty to warn for external insulation or flange gaskets.

Even if the Court finds that Connecticut law controls in this case, the result would be the same as under maritime law. Subsequent to *Fortier v. A.O. Smith Corp.*, No. FBTCV065005849S, 2009 WL 45524, which Plaintiffs rely on here, the asbestos judge in Connecticut revisited the issue of a manufacturer's liability for products which it did not manufacture, sell, or supply. Following *Fortier*, the California Supreme Court decided *O'Neil v. Crane Co.*, 53 Cal.4th 335, 266 P.3d 987, 135 Cal.Rptr.3d 288 (2012), in which the Court found that Warren was not liable for an asbestos product which was supplied by another manufacturer. Thereafter, in *Abate v. AAF-McQuay, Inc.*, 55 Conn. L. Rptr. 415, 2013 WL 812066 (Conn. Super. Ct. Jan. 29, 2013), noting that there was no Connecticut appellate law on a manufacturer's duty to warn of the hazards of another manufacturer's product, the asbestos judge cited *O'Neil* with approval, noting that the court "emphasized that there is no liability imposed outside of a defective product's chain of distribution, nor is such a duty [to warn] imposed in the product of another manufacturer." 2013 WL 812066 at *3. Following this discussion of *O'Neil*, the court granted the defendant's motion for summary

---

*& Liquid Sys. Corp.*, No. CV 19-9343-GW-KSX, 2021 WL 3555720 (C.D. Cal. Mar. 24, 2021); *Data v. A.O. Smith Corp.*, 2:19-CV-00879-MJH, 2021 WL 5710497 (W.D. Pa. 2021). Further, in Dennis, whether Warren specified any asbestos components was not actually at issue, as the court granted Warren's motion for summary judgment, citing a lack of evidence of causation. *Data*, 2021 WL 5710497, did not even involve Warren, so it necessarily involved different instruction manuals and different testimony from a different corporate witness.

5

judgment. *Abate* at *5. Here, Plaintiffs attempt to hold Warren liable for products which Warren did not manufacture, sell, or supply, and therefore, this court should grant Warren's motion for summary judgment.

C. **Plaintiff's Opposition Fails to Create a Question of Fact as to Whether Exposure to Asbestos from Warren Pumps Was a Substantial Contributing Cause of Mrs. Hilster's Disease under Maritime Law or Connecticut Law**

Since Warren is not liable under maritime law or Connecticut law for any alleged exposure to asbestos external insulation or external flange gaskets associated with Warren pumps that Mr. Hilster allegedly worked on, Plaintiffs cannot put forward any evidence which would create a question of fact as to whether Warren was a substantial contributing factor to Mrs. Hilster's mesothelioma.[3] It is undisputed that Mr. Hilster did not work on any internal components associated with the Warren pumps. Therefore, Plaintiffs can show only the mere presence of Warren pumps aboard these Navy submarines, which is insufficient as a matter of law to create a question of fact for a jury. [4]*Lindstrom v. A-C Prod. Liability Trust, et al.*, 424 F.3d 488 (6th Cir. 2005), *citing Stark v. Armstrong World Indus., Inc.*, 21 Fed.Appx. 371, 375 (6th Cir. 2001).

Should Connecticut law apply, Plaintiffs cite to *Champagne v. Raybestos-Manhattan*, 562 A.2d 1100 (Conn. 1989) in urging that circumstantial evidence is sufficient to prove exposure under Connecticut law. In *Champagne*, as part of the circumstantial evidence supporting the decision, the Court pointed to "the fact that coworkers who performed similar work testified that they handled the defendant's products." *See Champagne* at 1112. Plaintiffs lack this evidence here,

---

[3] Plaintiffs cite to Captain Woodruff's report to support their contention that "Mr. Hilster was exposed to asbestos from Warren pumps." However, Captain Woodruff is not qualified to offer such an opinion and he conceded as much in his deposition. Woodruff Depo, [Exh. 6], p. 85:2-13; 97:7-98:23

[4] Not all the Warren pumps at issue here contained asbestos. Deposition of Roland Doktor, October 1, 2021, [Exh. X], p. 35:20-36:2.

though, as <u>no witness</u> has testified that they handled a Warren asbestos-containing product in this case, only <u>external</u> flange gaskets and insulation that Warren is not liable for. Plaintiffs have thus not met their burden under *Champagne*.

Nevertheless, Plaintiffs urge that the mere presence of Warren pumps aboard vessels is sufficient evidence to survive summary judgment and cite to a Connecticut Superior Court decision denying Warren's motion for summary judgment in *Hammer v. A.L. Burbank & Co.*, No. CV095026285S, 2013 WL 4505032 at *1-3. Plaintiffs note that "Connecticut courts rarely grant summary judgment on causation grounds." *See* Doc. No. 376 at p. 19. Indeed, the reason that Connecticut courts rarely grant summary judgment on causation grounds is because Connecticut courts rarely grant summary judgment, period. Under Connecticut law, defendants are tasked with disproving every element of a Plaintiff's complaint with documentary evidence in order to move the burden of production to the Plaintiffs. *Hammer*, *2.

Unstated in Plaintiff's opposition is the fact that the Connecticut summary judgment standard presents a much higher bar for a defendant than does Rule 56 of the Federal Rules of Civil Procedure:

> Under Connecticut practice, the moving party has a heavier burden. The movant has the burden to submit evidence to demonstrate the absence of all genuine issues of material fact and it is entitled to judgment as a matter of law…As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent…When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue.
>
> *Hammer*, *supra*, at *2, *citing Ramirez v. Health Net of the Northeast, Inc.*, 285 Conn. 1, 11, 938 A.2d 579 (Conn. 2008).

And as the noted court in *Hammer*, which the Plaintiffs rely upon to argue summary judgment should not be granted, the same set of facts may have had a different result under the federal rule, because the burden is different:

7

>As this court has consistently emphasized, **[Warren's] arguments might be persuasive if the court were bound by Rule 56 of the Federal Rules of Civil Procedure**, the federal rule governing summary judgments. When explaining the movant's burden under Rule 56, the United State Supreme Court has observed that there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."
>
>*Hammer*, *supra*, at *2, *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (emphasis added).

Rule 56 of the Federal Rules of Civil Procedure does not require Warren to disprove Plaintiffs' case here with affirmative evidence to shift the burden at summary judgment, unlike Connecticut law. Warren has met its burden under Rule 56 by pointing to the absence of evidence of substantial causation on the part of the Plaintiffs. Plaintiffs cannot show that Mr. Hilster ever disturbed an asbestos component for which Warren had liability, let alone that he carried any fibers from a Warren asbestos component home to his wife on his clothes in sufficient quantity to contribute to the development of her disease.

Under Connecticut law or maritime law, Plaintiffs have failed to meet their burden of creating a genuine issue of material fact on causation, and therefore, Warren's motion should be granted.

**D.    GOVERNMENT CONTRACTOR**

   **a.   Contrary to Plaintiffs' Assertions, Warren Is Not Required to Show that the Navy Expressly Prohibited Asbestos Warnings[5]**

Plaintiffs do not challenge the evidence offered by Warren is its motion for summary judgment in support of the government contractor defense, nor should they as much of Warren's evidence was agreed to by the Plaintiffs' Navy expert. Instead in their opposition, Plaintiffs

---

[5] Warren notes that Plaintiffs have only opposed Warren's motion for summary judgment for the government contractor defense on the "failure to warn" claim, and not on "product defect" grounds.

repeatedly suggest that Warren must show that the Navy specifications prohibited Warren from warning about asbestos hazards or specified particular warnings. As support, Plaintiffs only cite an unpublished opinion from the Eastern District of Virginia from 2006, *Epperson v. Northrop Grumman Sys. Corp.*, No. 4:05CV2953, 2006 WL 90070 (E.D. Jan. 11, 2006). As an unpublished opinion from outside of the 3rd Circuit, this case has limited precedential value, and has not been cited favorably by the asbestos MDL or by any other court within the 3rd Circuit.

Both parties actually agree that the correct standard for the government contractor defense in the failure to warn context is set forth in *Tate v. Boeing Helicopters*, 55 F.3d 1150 (6th Cir. 1995), as does the asbestos MDL court. *See* Doc. No. 370 at p. 9; Doc. No. 376 at p. 21; *see also Hagen v. Benjamin Foster Co.*, 739 F.Supp.2d 770, 783 (E.D. Pa. 2010) (asbestos MDL decision citing *Tate* as appropriate test for government contractor defense in the failure to warn context). *Tate* explicitly discusses this very issue and rejected the contention that a defendant must show that the Navy specifications prohibited warnings or specified particular warnings. Rather, "[g]overnment discretion is required, not dictation of prohibition of warnings." *Tate*, 55 F.3d at 1157. The standard has therefore been agreed upon, Plaintiffs' attempt to "up the bar" notwithstanding.

The undisputed evidence offered by Warren in support of its motion establishes that the Navy issued reasonably precise specifications regarding the content of any technical documentation and other written communications accompanying the pumps, the Navy exercised its discretion in approving that documentation, including any warnings, and that the approval process was no mere "rubber stamp." See Doc. No. 370, at p. 9-11. Warren has met its evidentiary burden under the first and second prongs of *Boyle*.

### b. Plaintiffs Conceded the Third Prong of *Boyle* in Their Opposition.

Plaintiffs also argue that Warren has failed to meet the third prong of the government contractor defense in *Boyle*, 487 U.S. 500, 512, which requires the supplier to have "warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Id. However, in different sections of their opposition, Plaintiffs take inconsistent positions regarding the state of the government's knowledge of asbestos hazards. Plaintiffs' argument regarding the third prong of the government contractor defense suggests that the Navy was unaware of the dangers of asbestos exposure until the 1970s. *See* Doc. No. 376 at p. 24. Earlier in the same brief, however, they argue that in the 1930s and 1940s "Navy shipyards were studying and aware of the dangers of asbestos exposure." *Id*. at 5, *citing* Woodruff Dec., Doc. No. 376-5, at p. 34-35. Further, they assert that "as a supplier of equipment to the U.S. Navy, Warren was subject to the Walsh Healey Act" of 1951 which "indicated that precautions must be taken around asbestos…" *Id*. at p. 6. They also argue in that section that the "government knew or should have known that asbestos was hazardous and that Navy ship crew members and shipyard workers should have been properly warned and protected" during the relevant time period. *Id*. at 5, *citing* Woodruff Dec., Doc. No. 376-5, at p. 33. Plaintiffs appear to argue that the Navy did not know of the hazards of asbestos in the 1970's, but their shipyards were studying hazards in the 1930's, and the U.S. Government clearly knew in 1951 because it passed a law it had to enforce, so the Navy did know or should have known of asbestos hazards during all relevant time periods. Despite these inconsistencies, given that they have argued that the Navy knew or should have known of asbestos hazards during all relevant time periods, Plaintiffs have ultimately conceded the third prong of the defense.

Moreover, under *Boyle*, a "government contractor is only responsible for warning the government of dangers about which it has actual knowledge." *Kerstetter v. Pacific Scientific Company, et al.*, 210 F.3d 431, 436 (5th Cir. 2000); *accord Getz v. Boeing Co.*, 654 F.3d 852, 865 (9th Cir. 2011). In its motion for summary judgment, Warren offered evidence through its corporate representative that it had no awareness of any potential hazard associated with exposure to asbestos-containing components incorporated into its pumps during the time period when the pumps for the submarines at issue were sold. *See* Doc. No. 370 at p. 7, *citing* Doktor Dec. [Exh. 7] at ¶ 18.  Plaintiffs have offered no evidence to rebut this fact.  Neither of Plaintiffs' experts will testify at trial as to what Warren *actually knew* about the hazards of asbestos at any point in time that the Navy did not know.[6] With Warren's affirmative evidence, Plaintiffs' concessions in their opposition, and the testimony of Plaintiffs' experts regarding Warren's level of knowledge, Warren has, therefore, met the third prong of the Boyle test.

## II.     CONCLUSION

Warren respectfully requests the Court enter an Order granting its Motion for Summary Judgment, and requests the dismissal of Plaintiffs' claims and all cross-claims filed against this Defendant with prejudice.

---

[6] Woodruff Depo, [Exh. 6] at p. 104:3-19; Holstein Depo, [Exh. 10], at p. 59:5-12; 61:13-6; 64:23-65:6; 70:19-73:2.

WHEREFORE, Defendant, Warren Pumps, LLC, respectfully requests that this Honorable Court grant its Motion for Summary Judgment, and dismiss Plaintiffs' claims and all cross-claims filed against Warren Pumps, LLC with prejudice.

> Respectfully submitted,
>
> **MARSHALL DENNEHEY**
> **WARNER COLEMAN & GOGGIN, P.C.**
>
> By: */s/ Danielle M. Vugrinovich*
> Patrick Reilly, Esquire
> Ryan M. Krescanko, Esquire
> Danielle M. Vugrinovich, Esquire
> Attorneys for Defendant,
> **WARREN PUMPS, LLC**
>
> Union Trust Building, Suite 700
> 501 Grant Street
> Pittsburgh, PA  15219
> (412) 803-1140
> ptreilly@mdwcg.com
> rmkrescanko@mdwcg.com
> dmvugrinovich@mdwcg.com