IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

SHIRLEY A. HILSTER, DECEASED;     )
CHARLES W. HILSTERJR.,            )
INDIVIDUALLY; SHIRLEY A. CARPIN,  )          2:20-CV-01537-MJH
AS EXECUTOR OF THE ESTATE OF      )
SHIRLEY A. HILSTER, DECEASED; AND )
SHIRLEY A. HILSTER,               )
                                  )
           Plaintiffs,            )

      vs.

AIR & LIQUID SYSTEMS
CORPORATION, et al.,

           Defendants,

OPINION

Plaintiffs bring the within action against many Defendants for Shirley A. Hilster's

asbestos-related injuries and death.   Defendant, Warren Pumps, LLC, now moves for summary

judgment pursuant to Fed. R. Civ. P. 56. (ECF Nos. 369).  Warren has also moved to exclude

Plaintiffs' experts, Dr. Edwin Holstein and Dr. Brent C. Staggs. (ECF No. 358).  These matters

are now ripe for consideration.

Upon Consideration of Warren's Motion for Summary Judgment (ECF Nos. 369), the

respective briefs of the parties (ECF Nos.  364, 376, and 388), the arguments of counsel, and for

the following reasons, Warren's Motion for Summary Judgment will be granted. Based upon the

Court's disposition Warren's Motion for Summary Judgment, Warren's Motion to Exclude Dr.

Holstein and Dr. Staggs will be dismissed as moot.

I.      Background

Plaintiffs initiated this asbestos-related personal injury action, alleging that Shirley

Hilster was exposed to asbestos from contact with her husband's work clothes and person when

greeting him home, laundering his work clothes, and spending time in his vehicle. Plaintiffs allege Mr. Charles Hilster was employed as a pipefitter, hydraulic pipefitter, new construction project manager and maintenance supervisor at various premises and naval shipyards from approximately 1958 to 1987 and 1989 to 1995. (ECF No. 1 at ¶¶ 114-118.)

Plaintiffs allege that Shirley Hilster was exposed to asbestos from laundering her husband's work clothing throughout their marriage (with the exception of when Mr. Hilster served in the Navy). Charles Hilster claimed that he was exposed to asbestos while working as a pipefitter apprentice, pipefitter, supervisor, foreman, piping supervisor, assistant project manager and project manager at various industrial facilities and naval shipyards beginning in 1957 and continuing into 1975.  (ECF No. 320-1 at p. 12). Mr. Hilster testified that, during this time period, his wife Shirley would launder his work clothes and that she would have shaken them out prior to washing. (ECF No. 350-1 at p. 57:8-16). Shirley Hilster was diagnosed with malignant mesothelioma of the pleura in July 2020.   She died of this disease on October 11, 2020.

Plaintiffs aver claims of Negligence (Count I), Strict Liability (Count II), Breach of Implied Warranty (Count III), Negligence-Premises Liability (Count IV), Negligent Hiring, Training and/or Supervision of Defendant-Employees (Count V), Gross Negligence; Willful, Wanton, and Reckless Conduct (Count VI), False Representation (Count VII), Failure to Warn-Product Defendants (Count VIII), Failure to Warn-Premises Defendants (Count IX), Conspiracy, Concert of Action Damages (Count X), Wrongful Death (Count XI), and Survival (Count XII).

In its Motion, Warren argues that it is not liable, under maritime law, for after-applied external insulation and flange gaskets; that it had no duty to warn Mrs. Hilster as a "take-home" plaintiff; and that it is entitled to the government contractor defense on Plaintiffs' product defect

and failure to warn claims.  Warren also moves for summary judgment on Plaintiffs' non-pecuniary damages.

II.     Standard of Review

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  For a dispute to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted).  Additionally, for a factual dispute to be material, it must have an effect on the outcome of the suit.  *Id.*  In reviewing and evaluating the evidence to rule upon a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party.  *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted).  However, where "the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law.  *Moody*, 870 F.3d at 213 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "Discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion. Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Id.* at 256-57 (internal citation omitted).  "If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).  Judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of the party." *Id.* at 251 (internal citation omitted).

III.    Discussion

A.    Liability for after-applied external insulation and flange gaskets used on Warren Pumps

Warren argues, inter alia, that Plaintiffs cannot establish that any asbestos exposure from third-party external insulation and external flange gaskets used alongside a Warren pump was a substantial factor in causing Shirley Hilster's mesothelioma.   Plaintiffs contend that Warren sold its pumps with asbestos components and knew that asbestos gaskets and insulation would be used with its pumps.

1.   Applicable Law

As an initial matter, the parties dispute as to whether maritime or Connecticut law applies to Plaintiffs' claims against Warren.   Warren maintains that maritime law applies because Mr. Hilster's alleged exposure to asbestos was aboard Navy nuclear submarines being built and maintained at Electric Boat.  In addition, Warren contends that the claims arising out of Mrs. Hilster's illness was caused by "a vessel on navigable water."   Plaintiffs argue Connecticut law applies because Connecticut has the greatest governmental interest in this case, and maritime law does not apply because Mrs. Hilster's exposures occurred in Connecticut.

Federal courts are authorized under the U.S. Constitution and by Congress to hear cases pertaining to admiralty and maritime jurisdiction. U.S. Const. art. III, § 2; 28 U.S.C. § 1333(1). A party seeking to invoke maritime jurisdiction in an asbestos-related claim under section 1333

must satisfy a locality and connection test. *Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 458–59 (E.D. Pa. 2011). The locality test "is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." *Id*. at 466. Work performed aboard a ship that is docked or in "dry dock" at the shipyard is still considered to occur on navigable waters. *Conner*, 799 F. Supp. 2d at 466. The connection test is satisfied if (1) the exposure "had a potentially disruptive impact on maritime commerce" and (2) "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id*. at 463 (citation omitted). Where an individual is exposed to asbestos while he is performing maintenance on equipment integral to the functioning of the vessel, this exposure could "potentially slow or frustrate the work being done on the vessel." *Id*. at 465 (quoting *John Crane, Inc. v. Jones*, 274 Va. 581, 650 S.E.2d 851, 854 (2007)).

Here, if Mr. Hilster was the injured party, maritime law would likely apply.   The question of so-called bystander or take-home liability is less clear.  Mrs. Hilster's alleged exposure did not occur on "navigable waters,"  shipyard, dock, or drydock.   After review of the record of this particular case, this Court finds that it need not resolve that matter as both maritime and Connecticut substantive law provide the same conclusion to resolve Warren's liability arguments.

2.   Analysis

Warren argues that, under maritime law, it cannot be liable for after-applied external insulation and flange gaskets affixed to its pumps.  With regard to the liability of manufacturers and the use of third-party parts, the Supreme Court has held as follows:

> In the maritime tort context, we hold that a product manufacturer has a duty to warn when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the

product's users will realize that danger.

*Air & Liquid Sys. Corp. v. DeVries*, 139 S.Ct. 986, 996, 203 L.Ed.2d 373 (2019).  As regards the

first prong, *DeVries* clarified that "requires incorporation" includes when "(i) a manufacturer

directs that the part be incorporated; (ii) a manufacturer itself makes the product with a part that

the manufacturer knows will require replacement with a similar part; or (iii) a product would be

useless without the part." *Id*. at 995-6.

> Connecticut Product Liability law similarly provides:
>
> (a) A product seller shall not be liable for harm that would not have occurred but
> for the fact that his product was altered or modified by a third party unless: (1)
> The alteration or modification was in accordance with the instructions or
> specifications of the product seller; (2) the alteration or modification was made
> with the consent of the product seller; or (3) the alteration or modification was the
> result of conduct that reasonably should have been anticipated by the product
> seller.

Conn. Gen. Stat. Ann. § 52-572p.

Here, the record undisputedly demonstrates that Plaintiffs have produced no evidence that

Warren required that external asbestos flange gaskets and insulation be applied for its pumps to

function.  Warren did not provide the external flange gaskets or insulation.  The record

establishes that either the Navy or Electric Boat chose the external gaskets, and they chose

whether or not said gaskets contained asbestos or non-asbestos material.  Indeed, Mr. Hilster

testified that submarines sometimes used non-asbestos external gaskets on external pump

flanges.  Mr. Hilster also testified that the Warren pumps encountered were not covered with

insulation at the time of installation.  As regards external insulation and flange gaskets, the

record does not establish any genuine issues of material fact, under a maritime analysis, that (i)

Warren specified or directed the use of the external flange gaskets and/or insulation; or that (ii)

Warren incorporated an asbestos-containing external flange gasket and/or insulation on its

equipment, knowing that it would be necessary to replace the gasket and/or insulation with an identical or similar asbestos containing product; or that (iii) Warren's pump could not function without the use of an asbestos containing external flange gasket or insulation.  Likewise, under a Connecticut law analysis, the record does not support that the use of external flange gaskets and/or insulation made from asbestos (1) was in accordance with the instructions or specifications of Warren; or (2) was made with the consent of Warren; or (3) was the result of conduct that reasonably should have been anticipated by Warren.

Therefore, under either maritime or Connecticut law, Warren's Motion for Summary Judgment, as regard any liability for any asbestos exposure from external flange gaskets or external insulation produced by third parties, will be granted.

### B.  Liability for Internal Components within Warren Pumps

Aside from external flange gaskets and external insulation, Warren maintains that Plaintiffs have not produced sufficient evidence that Mr. Hilster encountered any Warren pumps which contained internal asbestos components.   Plaintiffs contend that Mr. Hilster did encounter asbestos when he removed asbestos gaskets from Warren pumps.

Mr. Hilster testified that he could not recall on which submarines he may have encountered Warren pumps.  (ECF No. 369-4 at p. 754).   Mr. Hilster also testified that he never performed internal repairs to pumps. *Id*. at p. 753.  Mr. Hilster offered no testimony that he worked upon internal asbestos containing components of pumps in general and/or of Warren pumps in particular, or that he removed external gaskets or insulation from Warren pumps.  Mr. Hilster  also testified that he could not identify the temperature at which Warren pumps operated; the particular size of any Warren pump; the particular color of any Warren pump; the type or application of any particular Warren pump; or whether the Warren pumps were aligned

horizontally or vertically; or how the Warren pumps were powered. *Id*. at pp. 754-56.  Plaintiffs'

proffered expert, retired Captain R. Bruce Woodruff, testified that he could not determine, from

his review of Mr. Hilster's testimony and the records in this case, whether, when, or how Mr.

Hilster worked on any particular pump or vessel.  (ECF No. 364-6 at pp. 10, 13-15).

　　　1.　Applicable Law

　　　As regards the internal components within Warren pumps, the parties again do not agree

on whether maritime or Connecticut law applies.  As above, the Court's disposition does not

require resolution of that issue, because both legal frameworks require similar elements, whose

analysis in this case leads to the same conclusion.

　　　Under maritime law, "a plaintiff must show, for each defendant, that '(1) he was exposed

to the defendant's product, and (2) the product was a substantial factor in causing the injury he

suffered.' *Lindstrom v. A–C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir.2005); citing Stark v.

Armstrong World Indus., Inc., 21 F.App'x 371, 375 (6th Cir.2001).

　　　Under Connecticut law, a plaintiff asserting a claim for asbestos-related injuries must "1)

identify an asbestos-containing product for which a defendant is responsible, 2) prove that he has

suffered damages, and 3) prove that defendant's asbestos-containing product was a substantial

factor in causing his damages." *Laposka v. Aurora Pump Co.*, 2004 WL 2222935, at *1 (Conn.

Super. Sept. 14, 2004) (quoting *Roberts v. Owens-Corning Fiberglas Corp.*, 726 F. Supp. 172,

174 (W.D. Mich. 1989)).  "The plaintiff must produce evidence sufficient to support an inference

that he inhaled asbestos dust from the defendant's product." *Drucker v. A.W. Chesterton Co.*,

CV075006717S, 2009 WL 2231654, at *2 (Conn. Super. Ct. June 23, 2009) (citing *Peerman v.

Georgia-Pacific Corporation*, 35 F.3rd 284, 287 (7th Cir.1994)).  A general recollection of a

product cannot overcome a motion for summary judgment.  *Gay v. A.O. Smith Corp.*, 2:19-CV-

1311, 2021 WL 2652926, at *4 (W.D. Pa. June 28, 2021)   Further, "'[s]peculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.'"   *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005) (quoting *Hedberg v. Ind. Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir.1995).

Here, the evidence and testimony of record do not connect any Warren-supplied asbestos containing product to Mr. Hilster without the insertion of speculation.  The record does not establish any question of material fact that Mr. Hilster worked on the internal components of Warren pumps.  Further, Mr. Hilster offered no evidence or testimony that he was present while others performed work on internal components of Warren pump.  While the record supports that Mr. Hilster may have removed third party external gaskets, which contained asbestos, he did not testify concerning his removal of external gaskets involving Warren pumps. Therefore, Plaintiffs have produced no evidence sufficient to establish any genuine issue of material fact that infers that Mr. Hilster was exposed to any asbestos containing material sold or supplied by Warren. Without direct or even circumstantial evidence that Mr. Hilster was definitively in the presence of a Warren product that contained exposed asbestos, the jury would otherwise be invited to improperly speculate based upon such attenuated circumstances.  Because no reasonable juror could find that a Warren product caused Mrs. Hilster's mesothelioma, Warren is entitled to summary judgment.

C.  Government Contractor Defense

Notwithstanding its argument on liability, Warren also maintains that it is entitled to summary judgment through the government contractor defense.  Warren argues that it had to comply with military specifications in order for its product to be purchased and accepted by the Navy.  It further contends that, during the relevant time period that Mr. Hilster worked at Electric

Boat, the Navy was aware of asbestos hazards to personnel. Plaintiffs contend that Warren has failed to meet its burden to demonstrate that it is entitled to summary judgment on said defense because Warren should have provided warnings to the Navy regarding its asbestos components. Warren responds that, even it had been aware of the asbestos hazards, all warnings and labeling were governed by the Navy's specifications and review.

The Supreme Court first articulated the so-called "government contractor defense" in *Boyle v. United Technologies Corporation*, 487 U.S. 500, 512 (1987). In order to protect the governmental interests it identified, the Court held that contractors must be exempted from liability, under state law, for design defects in military equipment when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. "The first two of these conditions assure that the suit is within the area where the policy of the 'discretionary function' would be frustrated – i.e., they assure that the design feature in question was considered by a Government officer, and not merely by the contractor itself. . ." *Id*. at 512.

With regard to failure to warn claims, the first prong of *Boyle* is altered to preclude liability where the government exercised discretion and approved the warnings. *See Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995). Courts require the government approval to "transcend rubber stamping" for the defense to shield a government contractor from liability for failure to warn. *Id*. at 1156–5. The choice of equipment-related warnings involves exercises of governmental discretion in the same way as does the selection of equipment design. *See Jurzec v. American Motors Corp.*, 856 F.2d 1116, 1118-19 (8th Cir. 1988); *Myslakowski v. U.S.*, 806 F.2d 94, 97-98 (6th Cir. 1986), *cert. denied*, 480 U.S. 948 (1987); *Nicholson v. United*

*Techs. Corp.*, 697 F. Supp. 598, 604 (D. Conn. 1988). As *Tate* observed, "[w]hen the government exercises its discretion and approves designs prepared by private contractors, it has an interest in insulating its contractors from liability for such design defects…Similarly, when the government exercises its discretion and approves warnings intended for users, it has an interest in insulating its contractors from state failure to warn tort liability." *Tate*, 55 F.3d at 1157 (citing *Boyle*, 487 U.S. at 511-12).

Thus, "[w]hen state law would otherwise impose liability for a failure to warn of dangers in using military equipment, that law is displaced if the contractor can show: (1) the United States exercised its discretion and approved the warnings, if any; (2) the contractor provided warnings that conformed to the approved warnings; and (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not." *Tate I*, 55 F.3d at 1157; *see also, e.g., Sawyer v. Foster Wheeler LLC,* 860 F.3d 249, 256 (4th Cir. 2017); *Leite v. Crane Co*., 749 F.3d 1117, 1123 (9th Cir.), *cert. denied*, 135 S. Ct. 361 (2014).

Three witnesses, authorized agent of Warren, Roland Doktor, retired Navy Rear Admiral David P. Sargent, and Plaintiffs' expert Captain Woodruff, have testified or attested regarding the Navy procurement process for pumps on the submarines where Mr. Hilster worked.  RADM Sargent asserts that, since the 1950s, the Navy has developed MILSPECS, which present detailed descriptions of government procurement requirements. (ECF No. 364-7 at ¶ 21).   MILSPECS include requirements such as chemical composition, dimensions, required testing and performance demonstrations, required labeling, and packaging and shipping requirements.  *Id*. The Navy also required manufacturers of components, such as pumps, valves, and electrical equipment, to comply with technical specifications expressly detailed in the MILSPECS in order

for the Navy to accept the equipment.  *Id.* at ¶ 23.  Specifications for any equipment intended for use aboard Navy ships was drafted, approved, and maintained by the Navy.  *Id.* at ¶ 22.  Only the Navy could change or modify those specifications.  *Id.*    According to RADM Sargent, "Warren Pumps equipment could not have been installed aboard Navy vessels unless that equipment was first determined by the Navy to be in conformity with all applicable Navy specifications and contractual requirements."  *Id.* at ¶ 39.   RADM Sargent also asserted that "[U]niformity and standardization of any communication, particularly safety information, are critical to the operation of the Navy or Navy ships."  *Id.* at ¶ 38.

In addition to MILSPECS, nuclear submarines were also subject to the standards established by BUSHIPS.  Captain Woodruff testified that BUSHIPS had an on-site team that was also involved in the design, construction, overhaul and repair of nuclear warships, including the development of specifications of those ships and their equipment.  (ECF No.  364-5 at p. 6-8).

According to Mr.  Doktor, under Warren's contract with the Navy and its shipyards, "Warren may have prepared Navy technical manuals for certain pumps that were supplied for Navy combatant vessels.  These technical manuals were governed by the Navy and were sent to NAVSEA or its predecessor, [Navy's Bureau of Ships] BUSHIPS or its acting agent for the Navy's review, comments and approval.  The Navy approved the finished contents of the Navy technical manuals determination that the Navy technical manual met its requirements under military specifications."  (ECF No. 369-7 at ¶ 8).   Mr. Doktor further asserts that "the Navy exercised control over any written material that Warren provided with its equipment by editing its content and requiring revisions prior to publication.  Thus, Warren's pumps and

12

accompanying written material would only be accepted under contract after the Navy determined that both complied with its military specifications." *Id*. at ¶ 9.

With regard to the Navy's awareness of asbestos hazards to personnel, Warren Pumps has proffered Samuel A. Forman, M.D., a former Navy officer who is board certified in occupational medicine. (ECF No. 364-11 at ¶ 1). Dr. Forman asserts that Navy has been aware of the potential hazards of asbestos-containing products since the 1920s and that such knowledge continued to expand over the next several decades. *Id*. at ¶¶ 20-47. In contrast, Warren asserts that it has no documentation from its historical records to reflect that it had any awareness of any potential hazard associated with exposure to asbestos at any time during the 1950s and 1960s. (ECF No. 369-7 at ¶¶ 17-18). Plaintiffs have argued that Warren knew or should have known about the hazards of asbestos based upon an industry awareness at the time. On this last point, Plaintiffs contend there exist genuine issues of material fact with regard to whether the Navy had sufficient awareness of the dangers of asbestos exposure or that its awareness was superior to Warren. Plaintiffs' arguments are unavailing as they have not proffered any evidence that disputes the documentation referenced by Dr. Forman regarding the Navy's historical awareness of asbestos health hazards. Further, Plaintiffs have not provided any documentation, or lay or expert witness, that disputes Warren's assertions with regard to the awareness of asbestos hazards.

Here, as regards design defects, the undisputed record demonstrates that the United States Navy approved reasonably precise specifications involving an extensive procurement and approval process, including MILSPECS with regard to design, materials, and labeling for Warren, from which Warren would have had no discretion to waver. The record also demonstrates that the Navy's acceptance of Warren pumps, after extensive inspections and

review, indicates that said pumps conformed to the Navy's specifications.   Finally, the record

demonstrates that, at the time it accepted of the Warren pumps in the 1950s and 1960s, the

United States Navy knew of the potential dangers of asbestos-containing products.    Therefore,

the Court finds no genuine issue of material fact with regard to Warren's government contractor

defense to design defect claims, and that Warren has met the three elements under *Boyle* to

succeed in this affirmative defense.

       As regards the government contract defense for Plaintiffs' failure to warn claims, both

RADM Sargent and Captain Woodruff agree the Navy determined the contents of all technical

manuals, including any cautionary language through an extensive exchange with vendors, such

as Warren.  (ECF No. 369-6 at p. 17 and ECF No. 369-8 at ¶ 35).   The record establishes that

the Navy maintained an extensive process and exercised its discretion regarding the

documentation, which would include safety information and warnings, related to Warren pumps.

Plaintiffs offer no contrary evidence regarding this process undertaken by the Navy with regard

to specifications and with regard to manuals, warnings, or any other written materials.   While

Plaintiffs contend that Warren violated the Navy's specifications in failing to warn of asbestos

containing products, Plaintiffs have offered no statement or evidence that, at the time Warren

supplied pumps or any time after, the Navy suggested any deficiencies or that Warren failed in

any respect to meet the Navy's specifications and requirements.  Plaintiffs cannot dispute those

warnings and cautions were within the purview of both the Navy's specifications for

documentation and its review to ensure conformity with those specifications. Warren's

compliance with the Navy's instructions during a robust, substantive, and multi-layered review

satisfy *Boyle*'s first and second elements.   With regards to *Boyle*'s third element, just as under

the Court's design defect analysis, Plaintiffs offer no evidence to refute that Warren had any

knowledge of asbestos hazards or that the Navy did not have ample or superior knowledge of asbestos hazards. Therefore, the Court finds no genuine issue of material fact with regard to Warren's government contractor defense for Plaintiffs' failure to warn claims, and that Warren has met the three elements under *Boyle* to succeed in this affirmative defense.

Accordingly, in addition to granting Warren's summary judgment against Plaintiffs' claims for liability, Warren is also entitled to summary judgment against Plaintiffs by virtue of the government contractor defense.   In so far as judgment will be entered in favor of Warren, the Court will not address the parties' remaining arguments regarding non-pecuniary damages.

IV.    Conclusion

Accordingly, based upon the foregoing, Warren's Motion for Summary Judgment will be granted.  Judgment will be entered in favor of Warren and against the Plaintiffs. Warren's Motion to Exclude Dr. Holstein and Dr. Staggs will be dismissed as moot. A separate order will follow.

DATED this 27th  day of May, 2022.

BY THE COURT:

MARILYN J. HORAN
United States District Judge